.ELIZABETH PORTER *v.* TRAVELERS INSURANCE COMPANY.

(*Nashville,* December Term, 1931.)

Opinion filed December 19, 1931.

HUGH STANTON, for plaintiff in error.

WILSON, KYSER, ARMSTRONG & ALLEN and EMMETT W. BRADEN, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit under the workmen's compensation statute by the widow of June Porter to recover for herself and children the statutory benefits to which she claims they are entitled by reason of his death. At the time Porter was killed he was in the employ of an ice company at Memphis and defendant was the ice company's insurer. The trial judge dismissed the suit.

It is conceded that Porter's death was accidental and that he was killed in the course of his employment. The only question is whether the fatal accident arose out of his employment.

The deceased was a driver for the ice company and also made collections for it on C. O. D. deliveries. He returned from his route early on a Sunday afternoon, unhitched his mules, watered and fed them, and put them in

their stalls of a barn on the company's premises. He had just stepped out of the barn into an alley on which it opened, on his way to the office of the company to turn in his collections, when he was shot and killed.

Just prior to the shooting of Porter, there was a dice game in progress in the alley in which other employees of the ice company and some outside negroes were engaged. A negro named Peebles seemed to have been running the game and it was discovered that the dice which he had supplied were "crooked." The negroes who lost their money to Peebles demanded its return. Peebles had a partner who ran down the alley to a parked automobile and returned with a pistol, threatening to shoot the other negroes if they put their hands on Peebles.

The court below finds that "about this time Peebles rushed over to his partner and said 'give me that gun, you aren't going to shoot it' and he turned immediately with the gun in hand and with an oath and demand from the men who had lost the money to give him whatever money they had left on their persons. Some of the men ran back into the barn and closed the door and left Wade Gholson out in the alley and just about that time June Porter had finished putting up his mules and stepped out into the alley near Gholson and Peebles said to Gholson 'throw me what you got,' and said to June Porter, who was standing near him 'and you too,' and Porter replied that he had nothing but the company's money. Peebles said he didn't care whose money it was, he wanted it. Peebles said to Wade Gholson 'give me what you got, buddy,' and Gholson replied, 'I haven't got anything, buddy. I have a dime or two of the company's money. Then Peebles cursed, up with the gun and shot

just the minute I told him that, I went then to get the company's money, before I could do anything he had done shot.'

"Peebles then shot twice at Wade Gholson, who was between him and June Porter, but both shots missed Gholson and one or both accidentally hit June Porter, which resulted in Porter's death. Peebles then fled without taking any money from the person of June Porter. The assistant manager of the company testified that after the death of Porter he checked up the C. O. D. deliveries of ice and that there was sufficient money on June Porter's person to cover these collections.

"The proof shows that Wade Gholson and others, who had lost their money with the crooked dice were demanding it back from Peebles and when he secured the gun he immediately refused to give their money back and turned with his gun demanding from all of those who had taken part in the game as well as June Porter to give him what they had and he was particularly mad with Wade Gholson and those who had tried to get their money before he got the gun and he immediately started shooting at Wade Gholson and missed the mark and killed June Porter."

This finding of facts is sufficiently sustained by the proof except in one particular. After the witness Gholson had related that Porter told Peebles that he had nothing but the company's money, Gholson was interrogated as follows:

"Q. State whether or not he (Peebles) said he didn't care what money it was. A. Well he didn't mention that part—just said he wanted what there was."

This seems to us a case in which Peebles and his partner started out to get the money of the negroes as-

sembled, with crooked dice. Failing in this effort, because the character of the dice was discovered, Peebles then undertook to get the money from the crowd at the point of his pistol. That is, if it be conceded that the shots fired at Gholson, which killed Porter, were fired for purposes of robbery rather than by reason of anger at Gholson, on account of previous efforts to get his money back and a denunciation by Gholson of Peebles which Gholson details.

Porter did not meet his death because he was in the employ of the ice company, or because he was carrying money belonging to the ice company. Peebles did not have any particular designs on Porter. Peebles was out to hold up the whole crowd. The peril was a common peril and not a peril incident to Porter's employment.

The familiar rule is that "an injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the condition under which the work is required to be performed and the resulting injury." *Carmichael* v. *Mahan Motor Co.,* 157 Tenn., 613; *Borden Mills, Inc.* v. *McGaha,* 161 Tenn., 376.

We are unable here to see any relation of cause and effect between the nature of Porter's work and the assault made upon him. We are unable to ascribe the assault to a hazard of the particular service required of Porter by his employer. The risk of being attacked for purposes of robbery by an employee to whom is entrusted the care of money or property is conceded by counsel for the insurance company ordinarily to be a risk of the employment. This is so when an attack is made upon a cashier, collector, messenger, or watchman to obtain the

employer's property committed to his care—when the attack is occasioned by the nature of the employment.

The most that can be said here, however, is that Peebles was undertaking to hold up a crowd in which a collector of the ice company was included. This employee met his death not because he was a collector of the ice company but because he was numbered in the crowd. We find no causal relation between the employment and the accident.

For the reasons stated, the judgment is affirmed.