UNITED STATES FIDELITY & GUARANTY CO. *v.* BARNES.

*(Jackson,* April Term, 1945.)

Opinion filed May 5, 1945.

R. H. RHODES and CHARLES G. NEESE, both of Paris, for plaintiff in error.

VAN DYKE & DUNLAP, of Paris, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a suit under the Workmen's Compensation Law, sections 6851 to 6901 of the Code.

The circuit judge awarded full compensation for the death of the deceased employee. The employer, City of Paris, was not made a party to the suit, and the action is against the insurer alone.

The plaintiff in error's theory of the case is that the injuries received by the deceased occurred "in the course of" but not "out of" his employment. This Court is materially aided by the exhaustive and able findings of fact by the circuit judge.

The suit was brought by Mrs. Bertha Barnes, widow of the deceased, for the alleged accidental death of her husband, which occurred on the night of May 28, 1944, about 8 o'clock. The deceased was employed as a night watchman by the Board of Public Utilities of the City of Paris and was killed by a fellow servant, L. C. Tucker, while both were on duty.

It appears that Charlie E. Robinson was the chief engineer for the Board of Public Utilities and W. Y. Howell was the superintendent. The plant consisted of several buildings, various machinery, and a large water tank or reservoir, and also a small house or shack for the night watchman.

On the night Barnes lost his life some colored employees of the Board of Public Utilities, who lived near by, heard shots on the premises. They found Barnes lying near his shack badly wounded from two pistol shots. He stated that Tucker had shot him and wanted the negroes to do something for him. The police were called and the officers carried Barnes to the hospital where he died a

short time later. A few minutes later other negroes living near the plant came upon the scene and told the officers some one had jumped into the city water tank. The tank was drained and Tucker's body was found.

The proof discloses that a Mrs. McFadden, a married woman of the city of Paris, had been paying frequent visits to Tucker at the place where he worked. Barnes reported this to Mr. Howell, the superintendent, and also told Mr. Robinson, the chief engineer. These officials objected to this woman visiting Tucker at the plant or place of business, and instructed Barnes to keep this woman away from the premises. It seems that the chief engineer had found the woman one night on the premises and ordered her to leave. Tucker resented this and abused and threatened Robinson but later apologized to him. It also appears that Tucker entertained ill feeling toward the deceased on account of this woman. It further appears that Tucker stated to another employee on the afternoon before the night of the killing that he was going to kill Barnes. It does not appear that Barnes anticipated any trouble with Tucker on the night he was killed.

We are of the opinion that the deceased's injuries were sustained by an accident arising out of and in the course of his employment while he was on duty and carrying out the orders of his superior, and that there was at said time and place a direct causal connection between the conditions and circumstances under which the work of the deceased as such employee was required to be performed, and his resulting injuries and death grew out of a difficulty directly arising from or related to the employment of Barnes and sustained in furtherance of the business of his employer. It does not appear that either Barnes or Tucker had any authority over the other.

In the case of *Milne* v. *Sanders,* 143 Tenn. 602, 624, 228 S. W. 702, 708, this Court quoted with approval from "A Corpus Juris Treatise on the Workmen's Compensation Act, page 72, [see 71 C. J. 644] as follows:

"Distinction Between Terms.—The expressions "arising out of' and 'in the course of' the employment are not synonymous, but the words 'arising out of' are construed to refer to the origin or cause of the injury, and the words 'in the course of' to refer to the time, place, and circumstances under which it occurred. An injury which occurs in the course of the employment will ordinarily, but not necessarily, arise out of it, while an injury arising out of any employment almost necessarily occurs in the course of it.

"In determining whether an accident arose out of and in the course of the employment, each case must be decided with reference to its own attendant circumstances, and it has indeed been stated rather broadly but by eminent authority that argument by analogy is valueless."

In the case of *Scott* v. *Shinn,* 171 Tenn. 478, 481-483, 105 S. W. (2d) 103, 104, this Court said:

"In *Patten Hotel Co.* v. *Milner,* 145 Tenn. 632, 238 S. W. 75, 76, *Carmichael* v. [*J. C.*] *Mahan Motor Co.,* 157 Tenn. 613, 11 S. W. (2d) 672, and *Porter* v. *Traverlers' Ins. Co.,* 163 Tenn. 526, 43 S. W. (2d) 1066, the court has quoted the following from *Connell* v. *Daniels Co.,* 203 Mich. 73, 168 N. W. 1009, 7 A. L. R. 1304:

" 'An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'

"In *Patten Hotel Co.* v. *Milner, supra,* the court quoted

with approval the following from *Baum* v. *Industrial Comm.*, 288 Ill. 516, 123 N. E. 625, 6 A. L. R. 1245:

" 'While there must be some causal relation between the employment and the injury, it is not necessary that the injury be one which ought to have been foreseen or expected. It must, however, be one which, after the event, may be seen to have had its origin in the nature of the employment.'

"In *McNicol's Case,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306 (a case cited with approval in several reported decisions of this court), it was said:

" 'It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. . . . It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'

"It is argued for plaintiff that Scott's employment took him to the lunchroom and presumably to the ice box, and, therefore, placed him in a place of danger when the negro sought to escape by the back door. The negro was back of the counter when Scott came in and could have reached the back door without coming around to the outside of the counter. However, as said in *Archibald* v. *Ott*, 77 W. Va. 448, 87 S. E. 791, 792, L. R. A. 1916D, 1013:

" 'It is not enough to say the accident would not have happened if the servant had not been engaged in the work at the time, or had not been in that place. It must appear that it resulted from something he was doing in the course of his work or from some peculiar danger to which the work exposed him.' "

Here it appears that the deceased was not only on the premises, but he was on his master's business and was carrying out the orders of his employer as watchman when he sought to find out whether this trespasser was on his employer's premises. In other words, his accidental death—accidental so far as he was concerned—was the result of his attentiveness to one of his duties.

The cases of *Marion County Coal Co.* v. *Industrial Commission et al.*, 292 Ill. 463, 127 N. E. 84, and *Martin* v. *Sloss-Sheffield Steel & Iron Co.*, 216 Ala. 500, 113 So. 578, relied on by the plaintiff in error, are not in point. Those were cases of personal difficulties which had nothing to do with the duties of employment.

We think the conclusion is inescapable that Barnes lost his life in a matter relating out of and in the course of his employment.

There is no error in the judgment of the lower court and it is affirmed.