MARY LOUISE SANDLIN

*v.*

J. D. GENTRY, D/B/A J. D. GENTRY TRUCKING COMPANY, and GLOBE INDEMNITY COMPANY.

(*Nashville,* December Term, 1956)

Opinion filed April 1, 1957.

510

WILSON N. WEST and HENRY D. BELL, Nashville, for appellant.

HOWARD, DAVIS, BOULT & HUNT, JOSEPH G. CUMMINGS, Nashville, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is an appeal from the Chancellor's opinion, and final decree, dismissing the complainant's suit.

Mrs. Mary Louise Sandlin filed her original bill, on her own behalf and minor children, against J. D. Gentry, d/b/a Gentry Trucking Company and Globe Indemnity Company under the Workmen's Compensation Law, T.C.A. sec. 50-901 et seq., seeking an award for the death of her husband, and for medical and funeral expenses.

The deceased, Livie Lonzo Sandlin, was an employee of J. D. Gentry at the time of his death, which occurred at the place of his employment, as the result of a personal encounter with one Lonnie Brake, who was a part time employee of the defendant. The said Brake was night watchman for Gentry and other neighboring places of business. The encounter between the deceased and

Brake occurred on the night of June 28, 1955, and death resulted from a gunshot wound inflicted by the said Brake.

There is no dispute as to the fact that both men were employed by Gentry and that the fatal encounter took place upon the premises of the defendant employer.

The Chancellor reviewed the evidence and, in a written finding of fact, found that the deceased was the aggressor. The suit was accordingly dismissed. In his memorandum overruling complainant's motion for a new trial he said:

"After again considering the record, no other conclusion can be reached by the Court but that the difficulty between Sandlin and Brake was a personal encounter, and it did not arise out of employment by the defendant, Gentry. In other words, the Court is of the opinion that it was not an accident arising out of employment, as it was not apparent to a rational mind, upon consideration of all of the circumstances that there was a causal connection between the conditions under which Sandlin's work was required to be done and the resulting injury, or death."

We think there is material evidence to show that the deceased was the aggressor from the beginning of the difficulty with Brake. While the issue may be debatable, the evidence clearly preponderates in support of the Chancellor's conclusion as to which of the men was the aggressor.

The fatal difficulty had its beginning as the result of a very trivial matter. The deceased had been called to the garage of Gentry Trucking Company to straighten

out a mistake whereby some steel, belonging to Kerrigan Iron Works, had been loaded upon one of Gentry's trucks. The steel was bound together by steel bands which had to be broken apart in order to transfer them. Three employees of Kerrigan and the deceased were engaged in this operation. While thus engaged some one of them asked for a crowbar to disengage the steel. Whereupon the deceased Sandlin went into the garage to find one. In the meantime a steel hook was found by one of the men on the truck and suggested that the crowbar was not needed. When this became apparent to Brake, who was standing nearby but taking no part in the matter, he called to Sandlin to "forget about it". When Sandlin came out of the building he said to Brake, in substance that he (Brake) "couldn't tell him what to do." At this time there was no physical encounter between the men, but some argument was had.

The steel was loaded on another truck which was driven by Sandlin to Kerrigan's place of business and unloaded, and then Sandlin returned to his; or Gentry's place, arriving about 10 P.M. About this time the two men again met in front of Gentry's. Brake was armed with a pistol and blackjack. The employer, J. D. Gentry, came upon them shortly after this, and had a pistol on the seat of his car. When the parties thus met for the second time Sandlin called Brake a vile name and told him he had better not hit him with that blackjack. Sandlin got out of his truck and there was a physical encounter between them. According to the testimony of J. D. Gentry, and also Brake, the deceased called Brake this vile name and "he hit him in the nose and knocked him down." (Tr. p. 66.) On cross-examination by complainant's counsel, Mr. Gentry gave the following testimony:

"Q. Did you hear Mr. Sandlin make that remark that night out there? A. No sir, I did not.

"Q. But you did see Mr. Sandlin strike him in the face? A. Yes, sir.

"Q. And knock him back some 10 feet? A. I sure did.

"Q. And when Mr. Brake got up off the ground, there was blood running down his face and all over his shirt, and he shot Mr. Sandlin? A. That is correct.

\*     \*     \*     \*     \*     \*

"Q. You say at the time Mr. Brake got struck, he had his pistol in one hand and his blackjack in the other   A. That is right.

"Q. And he was knocked 8 or 10 feet backwards by Mr. Sandlin? A. That is right.

"Q. To the ground? A. Yes, sir.

"Q. Was his face bleeding when he got up and was his shirt front bloody? A. Yes, sir.

"Q. Did he drop his blackjack and pistol when he was knocked to the ground? A. No, sir.

"Q. He held on to them? A. Yes, sir.

"Q. And he got up and shot Mr. Sandlin? A. Yes, sir.

"Q. That is your testimony that you want this Court to believe? A. Yes, sir."

According to Brake, who was a defendant's witness, the deceased, following his return to the Gentry garage and upon seeing him, said: "Now, I am going to settle this with you, you God damned son-of-a-bitch."

" * * * Q. Had you said anything to Mr. Sandlin at that time? A. No, I had not had anything to say.

* * * * * *

"A. * * * When I turned to my right here, I got hit.

"Q. Who hit you? A. Sandlin.

"Q. Did he knock you down? A. Yes.

"Q. What did he do to you, A. Well, he got down there on top of me, and when I tried to get up, I got kicked in the back and face, and I finally did get up.

"Q. Up to that time, you say when Mr. Sandlin hit you, had you threatened to kill Mr. Sandlin? A. No.

"Q. Had you cursed him in any way? A. No.

* * * * * *

"Q. When you finally got up, how far was Mr. Sandlin from you? A. Well, I would say about two good steps, or about 6 or 7 feet.

"Q. Was he backing away from you or coming at you? A. He said, 'Get your damn gun, it ain't no bigger than mine.'

"Q. Did you know whether or not he was armed? A. I didn't know.

"Q. Did he start toward you then? A. He took a step like he was going to lunge.

"Q. What did you do? A. Shot him.

"Q. Where did you shoot him? A. Well, all I know is what I heard. They said he was shot in the head."

It was upon the foregoing testimony, and finding of fact that the Chancellor dismissed the complainant's suit.

■ The appellant has filed 15 assignments of error, several relating to alleged errors in the Chancellor's conclusions from the proven facts. It is insisted that he overlooked and failed to consider certain facts favorable to the complainant. We cannot undertake to consider these facts and weigh them against the finding of facts by the Chancellor. We could not do so without trying the case *de novo,* which is contrary to all precedents in workmen's compensation cases.

The third assignment is, as follows:

"The Court committed error in its conclusion that Sandlin's death did not arise out of and in the course of his employment, because, according to the Court's finding of fact, Sandlin initiated the attack upon Brake and was the aggressor throughout. The question of which employee was the aggressor is immaterial to the issue as to whether the injury occurred in the course of and arose out of the employment."

In commenting on another assignment, which is argumentative, it is urged upon us:

"Since the Court did not find that Sandlin's conduct constituted willful misconduct within the meaning of the Workmen's Compensation Law, the finding of fact that Sandlin initiated the attack on Brake does not bar petitioner's recovery in this case."

■ The foregoing statement is a conclusion of the complainant's counsel. It is not warranted by the facts. We think it is reasonable to conclude from all the evidence that the encounter was personal as between the

parties, and that the deceased was guilty of "wilful misconduct" in that his attack upon Brake was without any excuse.

■ While it is the duty of the Court to liberally construe the compensation statute we cannot overlook the finding of facts by the Chancellor, and reach a contrary conclusion under the guise of liberality of construction.

Other assignments of error are (1) "The Court committed error in ruling that petitioner did not carry the burden of proof"; (2) "The evidence preponderates the Court's conclusion of law that Sandlin was not injured in the course of his employment"; and (3) the court erred in ruling as immaterial as to the state of mind of the deceased immediately before his remonstration with Brake.

The foregoing assignments are argumentative of the determinative issue, that is, was this homicide an accident arising out of and in the course of Sandlin's employment?

In support of the assignments counsel relies upon *Whaley v. Patent Button Co.,* 184 Tenn. 700, 202 S.W.2d 649; *United States Fidelity & Guaranty Co. v. Barnes,* 182 Tenn. 400, 187 S.W.2d 610; *Jim Reed Chevrolet Co. v. Watson,* 194 Tenn. 617, 254 S.W.2d 733; and other cases from foreign jurisdictions.

■■ While it is held in *Tapp v. Tapp,* 192 Tenn. 1, 236 S.W.2d 977, that the Court must construe the language of the statute, such as "out of", liberally we can do so only when it is "rationally possible" in order to sustain a reasonable causal relation as between the injured employee and his employer. Under the undisputed

facts of this case we think this homicide did not "arise out of and in the course of" the deceased's employment.

The rule is well stated by the Chancellor:

"Before there can be a recovery under the Act, it is necessary that the injury or death arise out of and during the course of employment of the employee. Arising out of and in the course of employment are not synonymous. An employee may suffer an injury during the course of his employment but at the same time it does not necessarily follow that the injury arose out of and in the course of his employment. An accident arises 'out of employment' where there is apparent to the rational mind upon consideration of all the circumstances a *casual* connection between the conditions under which the work is required to be done and the resultant injury. *Chamber of Commerce v. Turner,* 158 Tenn. 323, 13 S.W.2d 318; *Toombs v. Liberty Mut. Ins. Co.,* 173 Tenn. 38, 114 S.W.2d 785; *Whaley v. Patton Button Co.,* 184 Tenn. 700, 202 S.W.2d 649."

The assignments of error are overruled, and the Chancellor's decree is affirmed.