KENNON, Judge.
On April 14, 1949, Sydney T. Wall filed the present suit in which he sought to recover four hundred weeks compensation from W. R. Aldrich & ‘Company as the result of an automobile accident which occurred on April 17, 1948.
Plaintiff alleged that the defendant was engaged in constructing a highway for the State of Louisiana through the parishes of Grant and LaSalle, and that he was employed at the rate of $125 per week for the *681 purpose of supervising for defendant the sodding, resodding and planting of grass upon the shoulders of the road, ditches and embankment, which sodding work was. a part of defendant’s road building contract; that on the day of the accident, he drove a truck from Georgetown, Louisiana to Alexandria, Louisiana, for the purpose of carrying the weekly time sheets and payroll records of defendant to its office in Alexandria, and that while driving back to Georgetown on the return portion of this mission, he suffered serious and permanent injuries in a sudden accident which occurred when a cow crossed the highway in front of his truck.
The answer admitted that the defendant was engaged in the highway construction set forth in plaintiff’s petition, and that the contract included the sodding of the shoulders and other slopes adjoining the highway, but set forth that plaintiff was engaged in the sodding work on a partnership basis. The answer also admitted that plaintiff was injured on the date alleged but set forth that this was on a Saturday evening at a time when plaintiff was driving his own truck on a purely personal mission, which had no connection with the partnership work of sodding, or with any employment of Wall with defendant.
The District Court, in a written opinion, concluded that plaintiff was not an employee of defendant, describing the relationship between them as being a “joint adventure.” The District Court further found that the principal purpose of plaintiff’s visit to defendant’s office on the day in question was to obtain a personal loan and that if plaintiff did leave the payroll at the office, this mission was the secondary purpose of his journey to Alexandria. After concluding that “plaintiff has not made out his case with that degree of certainty and preponderance of evidence sufficient to establish his contentions,” the District Court rendered judgment rejecting his demands.
The case is before us on plaintiff’s devo-lutive appeal.
As stated by counsel for plaintiff, the 'first main point is whether or not plaintiff Wall was an employee or partner of defendant. Our finding of fact is that W. R. Aldrich & Company is a general contracting partnership operating on a large scale in constructing roads and bridges. At the time of the accident, this company had under contract the construction of a highway extending southward from Georgetown in Grant Parish, Louisiana. Part of this contract included a requirement that the shoulders and ditches of the highway 'be sodded, for which service the defendant received fifty cents per square yard of sod laid. A representative of the Aldrich company entered into a verbal agreement with Wall, whereby Wall was to sod sections of the highway as would be from time to time assigned to him by the Aldrich company. The company agreed to pay all the workmen used on the project and to defray all other expenses, including purchase of the sod, lumber, and other materials and for trucks needed. Wall was to receive a salary of $125 a week which, along with the other labor and expenses, was charged to the sodding contract account. This account was carried separately on the 'books of the defendant company. As a further consideration, plaintiff Wall was to receive one-half of the difference, if any, that might exist between the cost of laying the sod on the sections assigned him by Aldrich and the amount equal to forty-five cents per square yard sodded. Wall’s fifty per cent bonus did not extend to the other five cents which was retained by the defendant company to coyer overhead and central office expenses. Wall was given the responsibility of hiring and firing labor, who were in turn placed on the Aldrich company’s payroll. The Aldrich company made the usual deductions for Social Security and Federal income withholding tax. These weekly checks to Wall, according to defendant’s agent, were charged against “his half of the profits if there was any.” There was no ag-reement that the losses, if any, should be shared by Wall.
We find the' relationship between Wall and defendant similar to that considered by the Court in the recent case of Whitmeyer v. Poche, La.App., 49 So.2d 69. This 'Court there found that the relationship considered between Poche and the operator of his business' was not a partnership *682 despite the fact that the employee received a portion of the profits realized and actually exercised alhiost complete control of Poche’s business.
In the case before us, the Aldrich company had the contract with the highway department, including the sod work. Wall took over the sodding of any section of the work only as directed by defendant. While Wall selected the workmen, all were on the Aldrich payroll, as was Wall, and any one or all could have been discharged at any moment by the Aldrich company. In effect Wall was a superintendent of a .portion of the sodding work at a weekly salary of $125 (which he received each week, less Federal income withholding tax and social security deductions), with a probable bonus based on fifty per cent of the difference between the sodding costs and forty-five cents per square yard sodded. We find no agreement whereby the Aldrich company granted to Wall rights of the nature required to make him a partner or gave to Wall any right of control to make his status other than an employed superintendent
We next consider whether Wall was on company business or on a personal mission at the time he was injured. The office of the Aldrich company is in Alexandria. Wall and his wife were living temporarily at Georgetown. The accident occurred after dark on a Saturday evening when Wall was driving his own truck toward Georgetown on a return trip from defendant’s office in Alexandria. In support of his allegation that the purpose of the trip was to carry the time sheets to defendant’s office, Wall testified that he had prepared the time sheets at Georgetown on the Saturday in question and placed same on the front seat of the pickup truck, where they remained until he reached Alexandria, where he carried them into defendant’s office. When asked with whom he left the sheets, Wall replied that he thought he gave them to a Mr. Holland, or placed them on one of the girl’s desks. Mr. Holland, defendant’s manager, testified that the company’s office was closed all day Saturday for bookkeeping purposes; that he saw no time sheets brought into the office by Wall. The time sheets in question were to be used in making up payroll checks to be delivered on the job the following Saturday. The company manager testified that he knew of no other time when Mr. Wall had brought the time sheets in on Saturday afternoon or Saturday night, and it was not customary for this to be done since the office was closed for bookkeeping purposes on that day. Mrs. Monk, an employee of the company whose duty it was to make the payrolls, testified that she 'had never known Wall to bring in a payroll on Saturday. She did not find this particular payroll data in the office when she came to work the following Monday, but did find the time sheets on her desk two days later, on Wednesday. When asked whether or not the sheets could have been there on Monday and not been brought to her attention, she replied, “No, because all the office force knows the time sheets come to me, and when they come there and leave a time sheet, they leave it on my desk.”
In his petition Wall set forth that ‘he was directed and required by defendant to drive a truck each week from the George- 1 town office to defendant’s headquarters in Alexandria “for the purpose of delivering weekly payroll records and time sheet records * * However, when he was asked on the stand how the time reports and time sheets were usually delivered to defendant’s Alexandria office, he replied: “They would either be taken down thy myself or by some foreman or timekeeper, or by some man working for W. R. Aldrich & Company sent out to pick them up.”
When asked whether any W. R. Aldrich & Company man came from the sodding station in Georgetown to the office in Alexandria on the Saturday in question, Wall frankly replied that most of them did come in on Saturday evening and that “there was a man right ahead of me working for W. R. Aldrich & Company.” Wall also stated that the main reason he wanted to take the time sheet in was to collect other money owed him, and finally admitted on cross-examination that he endeavored to get a loan or advance of $3000 and did actually get the $1500 mentioned in Mr. Holland’s testimony.
*683 We think the principal purpose, and the only purpose established by the record, of Wall’s trip to Alexandria that day. was to borrow $3000 from defendant through Mr. Holland, who was in charge of the Alexandria operations. During the preceding week, Mr. Wall had asked the Alexandria office manager when he could see Mr. Holland (who was then out of the office) and discuss borrowing some money. The office manager, by long distance telephone, told Mr. Holland of Wall’s request, and at Holland’s direction advised Mr. Wall that he could see Mr. Holland if he would come to the office late Saturday afternoon. Taking the testimony as a whole, including Mr. Wall’s admissions on cross-examination, we find that Mr. Wall did at that time request a loan of $3000 to be repaid when he received some $300 or $400 as the result of work done for defendant on a prior job, where he was on a pure contractual basis, and out of hoped for future profits on the current job. Mr. Holland, after conference with Mr. Aldrich in Baton Rouge by telephone, agreed to advance $1500 to Mr. Wall, who carried defendant’s check for that amount away with him when he left the office just before the accident.
Our conclusion is that plaintiff failed to establish by a preponderance of the testimony on that subject that he actually delivered the payroll sheets to the Alexandria office on the Saturday evening preceding the accident, and further, should we concede for the sake of argument that the payroll sheets were delivered, the record nevertheless establishes that the principal and real purpose of his trip to Alexandria on this Saturday evening, after working hours, was to consummate a loan or advance of $3000, a mission not in the scope of his employment with defendant. Even had the evidence justified a finding that the time sheets were in fact delivered, such delivery would have been merely incidental to the travel and Wall, at the time of his injury, would still have been out of the scope of his employment. The test in such cases is found in a quotation from Blash-field’s Cyclopedia of Automobile Law and Practice, Vol. 5, Par. 3034, as follows:
“The fact that the servant is also serving his own personal ends does not necessarily place him beyond the scope of his employment, if in so doing he is also about 'his master’s business. In other words, the fact that the servant personally receives a benefit from his acts, does not relieve his master from liability for the servant’s negligence.
“The test in brief is this: If the work of the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it.”
The above paragraphs were quoted with approval in an opinion of Judge Hamiter while a member of this Court. Pearce v. United States Fidelity & Guaranty Co., La.App., 8 So.2d 743. The usual application of the above rule is to cases arising in tort. However, there is no reason why a similar test should not be used as a guide in a compensation case such as the one now before us.
Since our examination of the record as a whole has led to the conclusion that plaintiff has not established by a reasonable preponderance of the evidence that he was in the course of his employment at the time of his injury, the judgment of the District Court rejecting his demands for compensation is affirmed. Plaintiff to pay costs of both courts.