In the Matter of the Claim of HARRY PALY, Respondent, against LANE BRUSH Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 23, 1958.

*Charles G. Tierney* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*H. E. Ratner* for claimant-respondent.

REYNOLDS, J. This is an appeal by the alleged employer and his insurance carrier from a decision and award of the Workmen's Compensation Board, which reversed a previous decision of a referee finding no industrial accident and disallowing the claim, and found that the claimant, Harry Paly, sustained accidental injuries on January 6, 1953, while in the employ of the Lane Brush Company.

Appellants contend first that there is no substantial evidence to support the finding that there was an employer-employee relationship between claimant and the Lane Brush Company, and second, that if it be found that there was an employer-

employee relationship, the injuries sustained by the claimant did not arise out of and in the course of his employment.

On or about December 20, 1952, Harry Paly, the claimant, was living at Greensboro, North Carolina, and was employed by Star Housecraft, Inc., and Coastal Home Developers, Inc., of Savannah, Georgia. Both corporations were owned by the same people. He was a canvasser crew chief, training new men and canvassing himself in the daytime, procuring leads, and returning at night, as he testified, when the man of the house was home, to close sales. He was selling siding. His territory did not exceed 100 miles from Greensboro, N. C.

He left for a vacation in New York City on December 20, 1952. While in New York City he had a conversation with Mr. Leonard Lane of the Lane Brush Company and it was agreed that he was to sell brushes for the Lane Company in his spare time on a fixed commission of 7% of gross sales. While he intended to sell the brushes principally in North Carolina, South Carolina and Virginia, he was free to sell in the South generally, except in Washington, D. C., and Richmond, Va. He planned to retain his previous employment, as above described, and to sell the brushes on some evenings while on his regular work and in his spare time.

At about 11:00 P.M. on January 3, 1953, claimant left New York City en route to Greensboro, North Carolina. The trip takes about 14 hours from New York City to Greensboro, and he had intended to drive straight through, with no stops, arriving at Greensboro about noon on January 4, 1953. He had no intention of selling brushes on the return trip from his vacation. When he reached Elkton, Maryland, Sunday morning, January 4, 1953, a bearing in his car burned out. A day and a half was required to repair it and he stayed at a hotel in Elkton.

While at Elkton, awaiting repairs, he made inquiries concerning painting contractors, and, learning of a Jackson Paint Company nearby, hired a car and went out on Route 301, where he sold $60 to $70 worth of paint brushes. He returned to Elkton, and at about 7:30 P.M. on January 5, 1953 he left Elkton on a direct route for Greensboro, N. C. He had no intention of selling paint brushes between Elkton and Greensboro, N. C. Shortly after midnight, on January 6, 1953, on his way to Greensboro, he had an accident sustaining the injuries which form the basis of this claim.

No claim for compensation was made by the claimant until January 4, 1955, and no report of injury was made by the employer until January 25, 1955. In the interim, claimant sued a third party for his injuries, in which suit he was unsuccessful.

At the time of the compensation hearings the employer, the Lane Brush Company, had ceased business and Mr. Lane had left the State of New York. No testimony was presented by the State Insurance Fund on behalf of the employer, as the representative of the Fund stated "There is no one I can produce". The board in its memorandum of decision found that the employer was not prejudiced by the failure to give notice of the injury, and excused the failure. The board found that an employer-employee relationship existed and that the injuries sustained by the claimant arose out of and in the course of his employment.

On these facts, the first issue that we are confronted with is: was this claimant an independent contractor, or did an employer-employee relationship exist?

At the outset, of course, it is necessary to recognize that as the concept of an employee, for the purpose of a master's vicarious tort liability, was fashioned to fit a particular purpose, so the term employee when used in social and labor legislation has been interpreted in the light of the purpose of the legislation (*National Labor Relations Bd.* v. *Hearst Publications,* 322 U. S. 111; *United States* v. *Silk,* 331 U. S. 704). As a result, the concept of the independent contractor relationship gradually has been weakened in New York in compensation cases. Compare *Matter of Mace* v. *Morrison & Fleming* (267 App. Div. 29 [1943]), where Mace, an automobile salesman, was held to be an independent contractor, and *Matter of Gordon* v. *New York Life Ins. Co.* (300 N. Y. 652 [1950]), where an insurance salesman was held to be an employee. In the latter case the Court of Appeals, by a 4-to-3 decision, affirmed the finding of the board that claimant was an employee. The reason assigned was that, because the evidence permitted conflicting inferences, the courts were without power to rule, as a matter of law, that the claimant was an independent contractor. Thus, in effect, the Court of Appeals adopted the reasoning of Justice FOSTER in the dissenting opinion in the 3-to-2 decision of the Appellate Division (275 App. Div. 135, 138–139). It should be clearly understood that the dissenting members of the Appellate Division and the majority in the Court of Appeals do not say that *in their opinion* Gordon was not an independent contractor, but merely that they could not as a matter of law disturb the adjudication and findings of the board, because the evidence permitted conflicting inferences. Thus, this decision cannot be interpreted fairly to issue a "carte blanche" to the board to scrap the independent contractor doctrine, because such would be clearly contrary to the intention of the Legislature when it drafted the

Workmen's Compensation Law. It is felt by many that the responsibility for the extreme relaxation in this and other fields falls squarely on the shoulders of the Workmen's Compensation Board; that unless and until the Legislature changes the definition of "employee", they look to the board, and to the courts, with their limited review, to interpret and enforce the act as it now exists.

The two tests to be used are said by Larson to be (see Larson on Workmen's Compensation, §§ 43.30, 43.42, 43.51, 43.52) the "right to control" test and the "relative nature of the work" test, which, in substance at least, Larson believes the Court of Appeals actually applied in *Matter of Gordon* v. *New York Life Ins. Co.* (300 N. Y. 652) (Larson, § 43.54).

Applying the "right to control" test, we find this claimant had presumptively full-time employment with Star Housecraft, Inc., and was to solicit for the brush company only in his spare time; was free to use his own judgment as to when, where, and how and to whom he might attempt to sell brushes; was to pay his own expenses; was to use his own car; his remuneration was by commission solely, not by time; there is no claim that leads were to be furnished by the employer; there was no direction or control as to the selling except that he couldn't sell in Washington, D. C., or Richmond, Va.; he had no office space; no hours of employment; no reports to make; no control of the details of this admittedly casual and sporadic selling arrangement was in the employer. Certainly these facts and circumstances do not begin to meet the "right to control" test. Further, it would seem that there was less control here than in the *Gordon* case (*supra*).

The "relative nature of the work" test calls for the investigation, in the facts, of the following situations: the character of the claimant's work; how much of a separate calling it is; whether it is continuous or intermittent; whether it is expected to be permanent; its importance in relation to the employer's business; its character in relation to whether or not it should be expected to carry its own accident burden (Larson on Workmen's Compensation, §§ 43.50, 43.51, 43.52).

On the facts herein, can it be said, considering the sporadic and casual character of this claimant's work (already at presumptively full-time employment, with the expressed intention of continuance thereof), its intermittent nature, its minute relation to the employer's business, it meets the so-called "relative nature of the work" test? Is the nature of this working arrangement such that it would be unreasonable to expect that it should carry its own accident burden?

Under either or both of these tests, and despite the fact that we are dealing with the concept of "employee" under socially conceived legislation, as the statute now reads this claimant on the facts and circumstances of this case should not be considered as employee. Unless, as Judge DESMOND stated in *Matter of Gordon* v. *New York Life Ins. Co.* (300 N. Y. 652, *supra*) in his dissent: "this claim cannot be allowed unless we are to say that an insurance company cannot have anything but an employer-employee relationship with its soliciting agents or, in other words, as Judge FINCH put it in the *Wilson Sullivan* case (*supra* [289 N. Y. at p. 115]), 'that the recognized common law relationship of independent contractor has been outlawed by the statute'".

We pass now to the second contention of the appellants. Assuming that the relationship of employer-employee existed under the facts in this case, more must be shown to warrant an award here. It must also appear that such injuries *arose out of and in the course of the employment* (Workmen's Compensation Law, § 10).

Despite the fact that the claimant herein was an "outside worker" it does not follow that every accident he might have is encompassed by the Workmen's Compensation Law; it still has to be within the limits and bounds of his work (*Matter of Williams* v. *Arthur Gallow, Inc.*, 264 App. Div. 800; *Matter of Gottshall* v. *United Utilities and Specialty Co.*, 275 App. Div. 736; *Matter of Bennett* v. *Marine Works, Inc.*, 273 N. Y. 429).

Here, admittedly, this claimant was on his vacation and was returning from a purely personal trip to his headquarters at Greensboro, N. C., to resume his regular work with a presumably full-time employer, the Star Housecraft Corporation. It was his intention, on leaving New York City at 11:00 P.M. on January 3, 1953 to drive straight through, driving all night without stops, expecting to arrive at noon the next day at Greensboro to return to his regular employment.

Under *Matter of Marks* v. *Gray* (251 N. Y. 90), cited with approval by the Court of Appeals in *Matter of Davis* v. *Newsweek Mag.* (305 N. Y. 20, 24–26) and in *Matter of Glickman* v. *Greater N. Y. Taxpayers* (305 N. Y. 431, 434–435), to entitle a claimant to compensation for injuries suffered on a "dual purpose" trip, service to the employer must be a concurrent reason or cause for the trip.

Judge CARDOZO said in *Matter of Marks* v. *Gray* (251 N. Y. 90, 93–94): "We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be per-

missible that the trip would have been made though the private errand had been canceled   \*  \*  \*   If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own (*Clawson* v. *Pierce-Arrow Co.*, 231 N. Y. 273). If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk.''

Thus, here, when claimant's vacation was over he had to return to his home and work at Greensboro, N. C. Due to a car breakdown, he was stranded at Elkton, Md., and, while waiting for the repairs, he hired a car and made a trip out of Elkton to sell some brushes. It is important to observe that his accident did not occur on this side trip, this deviation (had the accident occurred during the business detour and before his return to the personal route, the business errand would have controlled and he would have been in the course of his employment (see Larson on Workmen's Compensation, §§ 19.36, 19.37; *Sater* v. *Home Lumber & Coal Co.*, 63 Idaho 776 [1942]), but hours later, after returning to Elkton and resuming his return trip to Greensboro from his vacation. On the basis of this chance sale, we are told that the return from his vacation, a purely personal trip, was transformed into a '' dual purpose '' trip, a concurrent cause for the journey. We cannot accept this. His work in no way created the necessity for travel. This chance sale, this incidental appendage to a purely personal trip, this business mission which was not of a character that would have necessitated a trip by someone (see Larson on Workmen's Compensation, § 18.13, in his analysis of Judge CARDOZO's opinion in *Matter of Marks* v. *Gray*, 251 N. Y. 90), should not, even under a socially conceived statute such as the Workmen's Compensation Law, form a basis for a holding that the accident arose out of and in the course of his employment. To so hold would extend the employer's liability beyond reasonable bounds.

Larson states, at section 19.24: '' Of course, if the accident had happened after the business call had been made and while claimant was on the final leg of his journey home, the injury would be clearly non-compensable '', citing *Jinks* v. *Burton Sutton Oil Co.* (44 So. 2d 343 [La. App., 1950]).

For the reasons set forth above, the decision and award should be reversed and the claim dismissed, with costs.

FOSTER, P. J., BERGAN, GIBSON and HERLIHY, JJ., concur.

Decision and award reversed and claim dismissed, with costs to the Lane Brush Company and the State Insurance Fund against the Workmen's Compensation Board.