678

ALBERTA H. ARMSTRONG

*v.*

LILES CONSTRUCTION COMPANY, INC., et al.

389 S.W.2d 261.

(*Nashville,* December Term, 1964.)

Opinion filed March 24, 1965.

CUMMINGS & MELTON, Woodbury, for appellant.

GOODPASTURE, CARPENTER, WOODS & COURTNEY Nashville, for appellees.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The deceased Arthur H. Armstrong, was the husband of the appellant, Alberta H. Armstrong, and was in the employ of the appellee, Liles Construction Company. The deceased began his work on a project of the appellee's at Sewart Air Force Base in June of 1962. In late October of that year he was killed in an automobile accident while on his way to work in the early morning. The deceased was employed as an assistant supervisor and in this capacity he was required to move about the job area, which was large, frequently during the day. In this movement he used his own car and, pursuant to an agreement with the overall supervisor of the job, he was given a tank of gas a week at company expense. It was also the custom of the deceased to pick up various pieces of small equipment needed on the job on his way home. These things he charged to the company and kept in his car over night and took them to work with him on the following morning. On the day of his death he had several small items in the car which he had purchased the night before and was taking to work with him. On the strength of these facts, it is the contention of the plaintiff-appellant that the trip to the job on the morning in question was within the scope of the deceased's employment thereby entitling the widow to benefits under the Tennessee Workmen's Compensation Act. This contention was rejected in the trial court and a ruling entered for the defendant. From that adverse decision of the Circuit Judge, Mrs. Armstrong now appeals.

The testimony in this case was offered by a fellow employee of the deceased and his supervisor as well as by

the operator of the service station where he purchased his gas on the company account and the owner of the hardware store where the goods were purchased on the company account and his wife, who was at that time an employee of the same hardware store.

In substance, the testimony of the people from the hardware store and the gas station just verified that the deceased was in the habit of making regular purchases there and charging them to the company account. These purchases were verified and their relative frequency was established. It seemed the deceased was in fact purchasing one tank of gas per week at the service station and these were paid for by the Company. The deceased was also making routine, almost daily, trips to the hardware store on his way home from work to purchase small items for the job which were charged to and paid for by the company also. His wife also testified that these purchases were brought home to the house with her husband, kept in his car over night, then taken to the job with him in the morning.

Mr. Charles W. Winkle, a fellow employee of the deceased, said that the deceased used his car on the job for transportation and that he, himself, had used the car on one occasion to get something for the job from Nashville. Mr. Winkle said also that the deceased had, on one occasion, used his car to take an injured workman to the hospital on the Air Base. He also substantiated the testimony of the others who testified as to the materials picked up in the afternoon by the deceased and taken to the job the following morning and that this was more or less a general practice of the deceased.

The other witness, and the sole witness for the defense, was the overall job supervisor, Mr. Rex Bennett. Mr.

Bennett was the man in charge of the project at the Air Base since the Construction Company was such a far flung operation that the actual owners were simply administrative personnel. The superintendents at the various job sites were given wide discretion as to the methods used in the carrying on of the work, and in this discretionary capacity, Mr. Bennett said he had authorized the deceased to purchase one tank of gas a week, at company expense, to compensate him for the expenses of using his car around the job from day to day. Mr. Bennett also was aware of the practice of the deceased in picking up light supplies in the evening and bringing them to work the following morning but that he was not authorized specifically to do this, yet the company did not object to this and paid for all purchases made in that manner by Mr. Armstrong.

The sole question in this appeal is whether or not, under the facts, which are not in controversy, as a matter of law, the activities of the deceased were sufficiently within the scope of his employment to warrant extension of coverage under the Workmen's Compensation Act to his death. His death resulted from an automobile accident on the way to his employment while he was transporting goods purchased the preceding night for the job. To make this decision we must review the applicable law in this State.

The Tennessee Workmen's Compensation Act is to be liberally interpreted in favor of the employee, sec. 50-918, T.C.A.

Petitioner cites 99 C.J.S. Workmen's Compensation sec. 221a, page 730, concerning the scope of employment and compensation for dual purpose endeavors. Following that section is a particular sub-heading *under the general*

*language* cited by the petitioner. The sub-section is entitled, "Trip or journey", 99 C.J.S. p. 723. The language of this section is:

"In determining the question of the employer's liability for an injury resulting on a trip undertaken for personal as well as business reasons, it is essential to determine whether, at the outset, the trip in question was that of the employer, or that of the employee. If it is the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to, and returning from, the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while en route to, or returning from, the terminus of his trip."

In the same volume the following is noted:

"An employee making a trip necessitated by his work is in the course of his employment so as to entitle him to compensation for an injury sustained during the trip, although the employee, while so traveling, is also serving some purpose of his own. The mission for the employer must be the major factor or, at least a concurrent cause of the journey; *it is insufficient if the employer's business is merely incidental to what the employee was doing for his own benefit, and an injury suffered by an employee on such a trip does not arise out of, or in the course of, the employment.*" 99 C.J.S. Workmen's Compensation sec. 221a, pages 733, 734 and 735. (Emphasis added.)

In 58 Am.Jur., Workmen's Compensation, sec. 220, entitled, "Where Employees Has Some Duty at Home or en Route", we find the following statement of the rule, previously quoted in C.J.S.:

"But the mere fact that he performs at his home some of the duties of his employment, or work incident thereto, does not of itself render compensable an injury sustained while traveling between his home and the employer's premises; in order to have such effect the performance of such duties must have necessitated, or been the occasion for, such traveling."

The above statement is further developed in 58 Am. Jur., Workmen's Compensation, sec. 241, as follows:

"While the question whether a trip taken by an employee in the interest of both himself and his employer is to be regarded as the latter's, so as to warrant allowance of workmen's compensation for injuries sustained in the course thereof, or his own, is in a sense a question of fact, it is a question that must be determined by the application of some legal test or standard. * * * This does not, however, require or authorize the weighing of the motives and objects of the employer and employee for the purpose of ascertaining the most important or compelling cause of the journey, *but simply requires that the service of the employer be at least a concurrent cause of the trip.*" (Emphasis supplied.)

In these cases where the employee is engaged in travel which is not ordinarily within the scope of his employment, the relation of the accident to the injury is an essential point of inquiry. The question is whether the employer exposed the employee to the risk. The service to the employer must, then, be at least a concurrent cause of the injury. Where a private purpose and a service to the employer coexist, the facts of the case must permit the inference that the journey would have been made even though the private purpose had been abandoned. The test is whether it is the employment or something else that

impels the journey and exposes the traveler to its risks. *Children's Bureau v. Nissen* (Delaware Super.) 29 A.2d 603.

In the Nissen case the Delaware Superior Court found that the death of a social worker was not compensable under the Compensation laws, and the enumerated tests, when she was killed in an automobile accident returning from a convention which she had permission to attend but for which she received no expense allowance.

In *Wall v. Aldrich* (Louisiana App.), 50 So.2d 680, the plaintiff filed a suit under the Louisiana Compensation laws seeking compensation for an injury suffered while making a trip in his own vehicle after working hours. This trip, he alleged, was for a business purpose. He was employed by a construction company as a supervisor for sodding operations. In the scope of this job he was required to keep time sheets on all men under him and to hire and fire members of the sodding crew. On a Saturday night after working hours the plaintiff was taking time sheets and payroll records to the company office with an intention of securing an advance or loan for himself while there. On the return portion of this trip he was severely injured. The Louisiana court held that this trip was not purely business, but that the business portion was merely incidental to the personal portion of the trip. They applied the test set forth in C.J.S., Am.Jur., and the Nissen case, supra, in their decision; although they were not specifically quoted.

All of the cases dealing with this problem of dual purpose trips and the rule applicable thereto spring from the landmark New York case of *Marks' Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181, decided by Judge Cardozo in 1929. In the opinion of many writers this rule is the

most complete and concise rule available when properly applied. This rule is the same one quoted in C.J.S. and Am.Jur., supra. Larson's Workmen's Compensation, Vol. 1, sec. 18,12.

Some question as to the continuing force of the *Marks' Dependents v. Gray* formula is raised by the case of *Kristianson v. Lehman,* 261 App.Div. 1023, 25 N.Y.S.2d 833, where an employee was allowed compensation for an injury suffered while at a drug store picking up medicine for her employer. The drug store was on the direct route to and from her work. Larson is of the opinion that this may or may not be consistent with the Marks' case depending upon facts which were not disclosed by the opinion of the court. Larson's Workmen's Compensation, sec. 18.22.

On the strength of this case the New York Courts have stated that *Marks' Dependents v. Gray,* supra, is no longer the law. *Goldman v. Palmer & Oliver, Inc.,* 277 App.Div. 194, 98 N.Y.S.2d 793. That case was decided in 1950, and it is worthy of note that no new rule is offered to replace the *Marks' Dependents v. Gray* rule and that the courts of other jurisdictions have continued to apply this rule, and it is still recognized by legal references sources. The new rule which supersedes the *Marks' Dependents v. Gray* rule has been stated to be that there should be "no nice inquiry" whether or not the employee was engaged in a business or personal mission at the time of the injury. 5 NACCA, LJ 64, 1950.

Since 1950, however, *Marks' Dependents v. Gray* has been followed in New York in *Paly v. Lane Brush Co.,* 6 A.D.2d 50, 174 N.Y.S.2d 205, 1958; and in *Benjamin v. Kaplan Elec. Co.,* 8 A.D.2d 239, 187 N.Y.S.2d 310, 1959, affirmed 9 N.Y.2d 801, 215 N.Y.S.2d 512, 175 N.E.2d 169.

In 1962 in *Carney v. Senak New York Corp.*, 17 A.D.2d 170, 233 N.Y.S.2d 316, the New York Court concluded that *Marks' Dependents v. Gray* was not positively authoritative in all respects. Still, however, the rule remains in New York and in most jurisdictions. There can be no certain judicial abandonment of this rule on the basis of current and recent decisions. On the contrary, the rule seems to be still in effect, though its form has been modified in some jurisdictions.

■ In Tennessee we have frequent judicial reminders that the injury suffered by the employee, in order to be compensable under our laws must arise out of and during the course of employment. There must be a causal connection between the workmen's accidental injury or his death and the nature of his employment. *White v. Whiteway Pharmacy, Inc.*, 210 Tenn. 449, 360 S.W.2d 12.

In *Tallent v. M. C. Lyle & Son*, 187 Tenn. 482, 216 S.W.2d 7, the plaintiff was authorized by his employer to take fellow workers to and from their jobs at Oak Ridge, Tennessee, in his personal automobile. He was injured while making some adjustments on his automobile before taking his regular passengers home. This accident was held to come under the Tennessee Compensation Laws and was therefore compensable. In the opinion of the Court the following language was quoted from *Ryan v. Farrell*, 208 Cal. 200, 280 P. 945:

"where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured."

■ This language is closely analogous to that cited supra as the rule superseding that of *Marks' Dependents*

*v. Gray.* However, upon close examination, the holding in the Lyles case is on all fours with the rule in *Marks' Dependents v. Gray.* Notice the quoted portion of the Ryan opinion relied upon by the Court states that when the employee *combines his business with that of his master, or is attending to both at the same time,* then no nice inquiry will be made. This actually seems to be, in effect, a restatement of the *Marks' Dependents v. Gray* rule which states that the only non-compensable injury is one incurred while the employee is on business *which is primarily his own,* that is, a trip that he, personally, would make independent of the need for assistance to his employer. All the quoted portion of the Ryan opinion seems to do is overrule the business detour part of the old rule which broadly says that if an employee is on his trip and leaves his route of travel to do something for the employer, then, for the duration of the detour, he is covered by compensation.

Therefore there is nothing in Tennessee repugnant to the express application of the *Marks' Dependents v. Gray* rule, and, since this rule is still in effect in the state of its origin and in other jurisdictions in the United States, it should find application herein as the most complete and concise rule available.

■ Under the undisputed facts of this case, it is unlikely that the trips of the deceased were the only way these supplies could have been obtained, for they could have been delivered or picked up during work hours. Also the deceased had no express authorization to make these trips, they were merely permitted. It is most likely that the prime purpose of the deceased's trips were to go home for the night and not to purchase supplies for the job. Therefore, these trips were primarily for the benefit of

the deceased and only of incidental benefit to his employer.

One of the primary errors in the application of the Workmen's Compensation Laws in the United States is confusing them with a form of social insurance as found in Great Britain. The Tennessee Compensation Laws were intended solely to compensate a worker for injuries arising out of employment and in the course of the employment. It would be broadening the laws too much to allow a worker to gain compensation simply because on his way home he picks up some small article for his employer's use. The articles picked up nightly by the deceased were of little importance to the job as they could have been purchased and delivered with the entire transaction taking place by telephone. The business purposes were not the prime mover of the deceased, rather it was his desire to go home for the night that was responsible for these trips. Therefore the decision of the lower court is affirmed.