**Kenneth HERRON, Appellant,**

v.

**C. W. FLETCHER d/b/a Fletcher Trucking Company et al., Appellees.**

Supreme Court of Tennessee.

Dec. 3, 1973.

Hugh W. Morgan, Knoxville, for appellant.

E. Michael Ellis, Knoxville, for C. W. Fletcher.

John K. King, Knoxville, for Interstate Transport and Travelers Indemnity Co.

Jerry A. Farmer, Knoxville, for Hagen, Inc., and Great West Casualty Co.

## OPINION

JENKINS, Special Justice.

This is a Workmen's Compensation case which originated in the Chancery Court of Knox County, Tennessee, by Kenneth Herron, a truck driver, against C. W. Fletcher, d/b/a Fletcher Trucking Company, Interstate Transport, Inc., and its insurance carrier, Traveler's Indemnity Company, Hagen, Inc., and its insurance carrier, Great West Casualty Company.

The case originally was rather complicated, but the issues were simplified

through the action of the Trial Court and counsel for all parties.

The Trial Court entered a judgment for workmen's compensation benefits against Fletcher, Hagen, and Great West Casualty Company. Hagen, Inc. and Great West Casualty Company are appealing the Chancellor's decision, and the petitioner, Kenneth Herron, is appealing in order to "protect" himself against what this Court might decide.

One question to be decided is whether or not the petitioner is entitled to collect workmen's compensation benefits from one or more of the defendants.

The other question, a more serious one, is whether or not the petitioner had deviated from his scheduled route so that he would not be entitled to workmen's compensation benefits.

For the most part, the facts presented before the Chancellor were undisputed. C. W. Fletcher owned a fleet of trucks which he leased to Interstate Transport, Inc. on what is known in ICC terminology as a permanent lease. According to the terms of the lease, Fletcher was charged with the responsibility of supplying drivers as well as providing maintenance for the vehicles.

The plaintiff in this suit, Kenneth Herron, was assigned as a driver on one of the trucks leased to Interstate. Interstate arranged for Herron to transport a load of chickens to Minnesota. After making the delivery in Minnesota, Mr. Herron was instructed to wait by both Mr. Fletcher and Interstate in hopes of getting a shipment to return to the Tennessee area with rather than returning empty.

Several days after arriving in Minnesota, Mr. Herron was notified by Mr. Hogan, a dispatcher for Interstate, of a shipment which was to be made from Rice Lake, Wisconsin, to Brock Candy Company in Chattanooga, Tennessee. Herron was told to contact Hagen, Inc., another trucking company, regarding the shipment, which he did. Thereafter Herron signed a trip lease agreement purportedly on behalf of Interstate with Hagan for the shipment of the goods from Wisconsin to Chattanooga.

Herron arrived in Nashville on a Saturday afternoon with the shipment destined for Brock Candy Company in Chattanooga. Being aware of the fact that the candy company was closed and would not be open until Monday, Herron decided to travel to his home base in Lenoir City rather than directly to Chattanooga. The Chancellor concluded in his finding of facts that Herron planned to travel to Lenoir City for the purpose of having routine check-ups performed on his vehicle on Sunday, and in addition he intended to spend Saturday and Sunday nights at home.

While crossing what is known as "Rockwood Mountain" on the way to Lenoir City, the brakes on Herron's truck failed and an accident resulted. Herron sustained serious personal injuries which resulted in his bringing this action for compensation.

The attorneys for Fletcher and Interstate argued before the Chancellor that the only party liable under the Workmen's Compensation Act to pay benefits to the injured Herron is the party who had control over Mr. Herron's operation at the time of the accident, namely, Hagen, Inc.

Because of the lease arrangement involved, the Chancellor rejected this argument, saying:

"Under the authority of Davis vs. J & B Motors, 193 Tennessee at 233, [245 S. W.2d 769 (1951)] our Supreme Court has treated these trucking leases the same as the statute [T.C.A. 50–915] treats prime contractors and subcontractors; that is, that the duty and obligation flows to the benefit of the injured employee against those both prime contractor and subcontractor."

The Chancellor then concluded that under the authority of Davis v. J & B Motor Lines, supra, that Fletcher and Hagen

should be treated as prime contractor and subcontractor, and consequently, that they are jointly liable under the Workmen's Compensation Act.

Herron perfected an appeal to this Court and assigned as error the trial court's conclusion that Interstate was not, along with Fletcher and Hagen, obligated to provide coverage for Herron. Herron does not question the applicability of the prime contractor-subcontractor analogy, but he simply contends that the trial court made a factual error by concluding that Interstate had no business connections with the trip from Wisconsin to Chattanooga, thus, no liability.

Although Interstate arranged for the shipment from Wisconsin to Chattanooga, the Chancellor found as a matter of fact that the company did so as a courtesy to Fletcher and that any money collected belonged solely to Fletcher. Furthermore, the Chancellor found that Herron was not authorized to sign a trip lease agreement on the behalf of Interstate, and the trip lease purportedly between Interstate and Hagen was in fact for the benefit of Fletcher.

The Chancellor's conclusions are supported by the testimony of Mr. Ferguson, General Manager of Interstate. He testified that Interstate shipped only from this area to other areas of the country and that it did not deal in return trips. In addition, he said that whenever a return shipment was arranged, if Interstate received the check for the shipment, the entire check was turned over to Mr. Fletcher.

▇ In view of this testimony, we must conclude that there is material evidence to support the Chancellor's finding that Interstate did not have any business connections with Herron at the time of his accident; therefore, no obligation to see that Workmen's Compensation insurance protected him at the time of the accident.

Hagen, Inc. also perfected an appeal to this Court. Hagen does not dispute its general obligation under the Workmen's Compensation Act. Instead, counsel for Hagen cites numerous cases which hold that where an employee deviates or detours from his employer's business travel, the employee takes himself out of a compensable status. Counsel argues that these cases are authority for concluding that Herron was not in a compensable status at the time of the accident because Herron deviated from the most direct route to Chattanooga from Wisconsin for purely personal reasons.

Although the Chancellor recognized the fact that Herron planned to spend the night at home, he concluded that this was merely an incidental benefit for Herron and that Herron's major reason for traveling to Lenoir City was to have check-ups and service performed on the truck. Since both Fletcher and Hagen had an interest in seeing that the truck was serviced, the Chancellor concluded that Herron was on a mission of Hagen as well as Fletcher when the accident occurred, notwithstanding any personal benefit involved for Herron.

With reference to this question, we quote from the Chancellor's memorandum opinion:

"It is true that when Mr. Herron picked up this condensed milk for delivery to Chattanooga, he was told that they would like to have the product in Chattanooga by Friday, which is as has been testified to, and as anyone can readily understand, would be a physical impossibility short of air freight, which wasn't being paid for. The record shows that the Brock Candy Company would not have been open on Saturday, that the creamery in Wisconsin had made no arrangements for a shipment to be offloaded on Saturday. This accident happened about seven-thirty p. m. on Saturday evening, as Mr. Herron, in the Court's opinion, was taking a proper and acceptable approach by coming to his home base in Lenoir City for the usual

routine check-ups on his vehicle, and for a place to stay until delivery could be made the following Monday morning in Chattanooga.

"It is true from the proof that he chose a route that would take some three hundred miles instead of ninety-five miles, but the Court concludes under the facts and circumstances that it was a reasonable route; that he was within reason in doing it, and would observe further that again Mr. Fletcher has not testified to deny that this would be a proper action, one that he would expect as Mr. Herron's employer in making the run that he did from Wisconsin to Chattanooga, Tennessee, so therefore I find under the circumstances, although there was a substantial increase in mileage, that there was not a deviation in the sense that the Courts reject liability. It's said that the increased number of miles increased the risk that Hagen took. Well, that's not the quantum that one goes by."

This Court, speaking through Chief Justice Burnett quoted at length from 99 C.J.S. Workmen's Compensation § 221, p. 730, and 58 Am.Jur. §§ 220 and 241. This Court approved the following language from 58 Am.Jur. § 241:

"While the question whether a trip taken by an employee in the interest of both himself and his employer is to be regarded as the latter's, so as to warrant allowance of workmen's compensation for injuries sustained in the course thereof, or his own, is in a sense a question of fact, it is a question that must be determined by the application of some legal test or standard. * * * This does not, however, require or authorize the weighing of the motives and objects of the employer and employee for the purpose of ascertaining the most important or compelling cause of the journey, but simply requires that the service of the employer be at least a concurrent cause of the trip." 215 Tenn. 678, at 684, 389 S.W.2d 261, at 263.

In the case now under consideration, it is evident that Herron would have gone to Lenoir City to have the truck serviced even in the absence of personal reasons.

 It is clear that as long as the trip is for the benefit of the employer, it does not matter that it also serves purposes of the employee. Armstrong v. Liles Construction, 215 Tenn. 678, 389 S.W.2d 261 (1956). The Chancellor decided that the trip was for the benefit of Hagen and in this conclusion he is supported by material evidence. Consequently, his decision is affirmed.

The memorandum opinion of the Chancellor is a complete analysis of the facts and the law applicable thereto and has been quite helpful to this Court.

The briefs filed on behalf of all parties are excellently prepared. We wish to especially commend the petitioner's attorney for his efforts in protecting the interests of the petitioner in such a workmanlike manner.

The decree of the Chancellor is in all matters affirmed.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Judge, concur.