Mike LOY, Plaintiff–Appellee,

v.

NORTH BROTHERS COMPANY, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

April 2, 1990.

---

Robert H. Watson, Jr., John C. Duffy, Watson, Reeves and Beeler, Knoxville, for plaintiff-appellee.

J. Gregory O'Connor, Carpenter & O'Connor, Knoxville, for defendant-appellant.

## OPINION

FONES, Justice.

In this workers' compensation appeal, the defendant challenges the trial court's judgment on two grounds. First, the defendant argues that the plaintiff's injury did not arise out of and was not in the course of his employment. The defendant also urges this Court to find that plaintiff's claim was barred because his actions constituted willful misconduct. We affirm the trial court's judgment in favor of the Plaintiff.

Defendant, North Brothers Company (hereinafter "North Brothers"), was in the business of installing insulation in buildings. Plaintiff, Mike Loy, worked for North Brothers in its warehouse. Occasionally, Loy would be assigned to a crew that installed insulation. In September of 1987, Loy was a field worker on a crew installing insulation at Baptist Hospital in Knoxville. After a week at this job site, the foreman went on vacation, and Loy was put in charge of the crew.

The crew's responsibility at Baptist Hospital included spraying fireproofing material on steel beams. North Brothers wanted three people on the crew. When the plaintiff was foreman, the crew consisted of Loy, his brother Robbie Loy, and Stanley Carter. Robbie Loy was hired to fill the regular foreman's position on the crew when Plaintiff asked his supervisor to hire his brother.

As foreman, Loy was responsible for keeping track of the other two employees' work time. Also, he was responsible for the insulation job being done correctly. He was paid more for being foreman than he was for working as a regular field worker. Loy's supervisor, Jay Cox, testified that he wanted the job finished by Monday, September 28. During oral argument Defendant's attorney added, "It was a rush job. Admittedly, the company wanted to finish the job and get it out of the way." Apparently, other field crews were scheduled to start work, and they could not start until this crew was finished with the insulation.

On Friday, September 25, Stanley Carter quit his job and left at 3:00 or 4:00 in the afternoon. Loy and his brother discussed finding another crew member and cleaned the work site. They left at 5:00 p.m. without informing North Brothers that Stanley Carter quit and that they needed another crew member. The crew was scheduled to work Saturday and Sunday.

On Friday evening, Loy and his brother decided that they would approach Jimmy Moore, a friend from high school, to see if he was interested in working on the crew.

Loy testified that he wanted to determine "if he [Jimmy Moore] wanted to work this job, and if so, take him with us the next morning." Plaintiff further explained, "My plan was to bring Jimmy in the next morning, and I was assured that Jay [Cox] would hire him on the job, because I had been through things like this before." In response to a question concerning the responsibility of the crew supervisor, Cox testified, "If we were short and he knew someone, I would expect him to advise me 'We're short, we need to hire someone, and I have a man we need to replace.'" Cox also stated at trial that if Loy had brought a man to the job Saturday morning, "I would have hired that man."

Loy drove alone to Moore's house Friday night. He did not call Moore because he believed that Moore did not have a telephone since he previously did not have one at his house. Before reaching Moore's house, Loy was injured in a one-car accident. Loy does not remember anything about the drive to Moore's home due to the serious head injuries he sustained. There was, however, one witness to the accident. John Adams, a high school student at the time of the accident, was driving behind Loy that Friday night. There were three passengers in Adams' car. One of the friends died between the time of the accident and the trial, and the other two passengers' whereabouts were unknown.

Adams testified that as he was following Loy, the two cars reached speeds well in excess of the posted thirty mile per hour limit. In describing the road, Adams stated, "It's a two-lane road with no lines ins [sic] the middle, fairly flat, didn't seem too curvy, one curve." When Loy approached the curve in the road, his car hit a bump and skidded off the road. Adams testified as follows:

He speeded up, and I speeded up, and we were going—coming up on a curve. There's like a little raised part in the road where it looked like it had been fixed or something, and I slowed down because I didn't know the road. He hit that bump, slid across on the right side of the road, and then went back across the other side of the road and hit the tree.

He added, "When he hit the bump the rear tires lost traction and went over in the grass on the right side of the road." Adams estimated the speed of Loy's car at between fifty-five and sixty miles per hour.

## I.

 An injury must arise out of and be in the course of employment to be compensable under the Workers' Compensation Act. Tenn.Code Ann. § 50–6–103. The "arising out of" requirement refers to the origin or cause of the injury. *McAdams v. Canale*, 200 Tenn. 655, 661, 294 S.W.2d 696, 699 (1956). "In the course of" refers to the time, place, and circumstances of the injury by accident. *Id.* This Court has held:

> [G]enerally, an injury arises out of and in the course of employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment; and, any reasonable doubt as to whether an injury arose out of the employment or not is to be resolved in favor of the employee.

*Hall v. Auburntown Industries, Inc.*, 684 S.W.2d 614, 617 (Tenn.1985).

The trial court held that "the plaintiff was engaged in an employment duty when the accident occurred, i.e., trying to get a replacement for the crew he supervised to work the next day." The court concluded, "Thus, the injuries received in the accident arose out of and in the course of employment." North Brothers appeals this holding and argues that Loy did not have the duty nor was he authorized to hire employees. North Brothers also emphasizes that Loy did not have a duty to travel, he did not have prior approval to travel, and he was never reimbursed for travel expenses.

 This issue, whether the injury arose out of and in the course of employment, is

a factual determination rather than a legal one. *McCammon v. Neubert*, 651 S.W.2d 702, 704 (Tenn.1983). Thus, our review is governed by Tenn.Code Ann. § 50–6–225(e). The statute requires that our review of findings of fact by the trial court is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.

■ This injury by accident occurred while Loy was driving to Jimmy Moore's home for the purpose of determining if Moore was interested in working on a North Brothers crew. Loy testified that he was going to bring Moore to the work site Saturday morning so that his supervisor would hire him. Loy said that he "had been through things like this before." Jay Cox, Loy's supervisor, testified, "[W]e do solicit workers through our workers." He also stated, "If Mike [Loy] had a new man on the job [Saturday morning] I would have hired that man. This would have permitted Mike to have brought this man to the job."

When addressing the issue of whether an injury arose out of and in the course of employment, the Court in *Leonard v. Cranberry Furnace Co.*, 150 Tenn. 346, 354, 265 S.W. 543, 545 (1924) held as follows:

> It may be said that the test is one of contract rather than conduct. If the employee is within the contemplation of his contract, if he is doing that which by his contract, either expressly or by implication, is made his duty, then he is in the course of his employment, however negligent his conduct may be.

Loy's actions in finding a third crew member were within the contemplation of his employment contract as evidenced by his position as foreman, the expressed desire to finish the job by Monday, and North Brothers' policy of soliciting workers through their employees. Although Loy may not have had the authority to hire employees, he implicitly had North Brothers' permission to bring prospective workers to the job. "[I]mplied authority em-

braces all powers which are necessary to carry into effect the granted powers in order to make effectual the purposes of the agency." *Southern Ry. Co. v. Pickle*, 138 Tenn. 238, 244, 197 S.W. 675 (1917). Loy's attempted contact with Moore was an action necessary to bring a worker to the job. There were no limitations placed on Loy, the temporary foreman, on how to bring prospective employees to the job. Thus, Loy's injury by accident arose out of and in the course of his employment.

North Brothers argued in its brief and in oral argument that there is a difference in the compensability of acts done under an employment duty and acts done with an employer's permission. It cites *Armstrong v. Liles Construction Co.*, 215 Tenn. 678, 389 S.W.2d 261 (1965) for this proposition. In *Armstrong*, the employee was injured in an automobile accident on his way to work in the morning. He was carrying in his automobile supplies he had purchased for work on his way home the night before. The employee had the employer's permission to stop on his way home to pick up these supplies, but he was not required to do so. The Court held that the injury did not arise out of and in the course of his employment. The injury in *Armstrong* occurred while the employee was on a "dual purpose trip." In those cases, the inquiry focuses on whether the "primary purpose" of the trip was the employer's business or a trip that the employee would make independent of any need to assist the employer. The *Armstrong* court found the "business purposes were not the prime mover of the deceased, rather it was his desire to go home for the night that was responsible for these trips." *Id.* at 689, 389 S.W.2d at 266. The instant case does not involve a "dual purpose trip." Defendant's suggestion in its brief that Plaintiff may have had a personal objective in making the trip has no evidentiary support in this record. The trial judge found, and we agree, that the purpose of the trip was to get a workman the employer needed to work the following day.

II.

■ North Brothers argues that Loy's claim is barred because his actions of driv-

ing over the speed limit constituted willful misconduct. The Tennessee Code requires:

> (a) No compensation shall be allowed for an injury or death due to the employee's willful misconduct. . . .
>
> (b) If the employer defends on the ground that the injury arose, in any or all of the above stated ways, the burden of proof shall be on the employer to establish such defense.

Tenn.Code Ann. § 50–6–110. This Court has held that "willful misconduct within the meaning of the statute means something more than mere negligence and carries the idea of deliberation and intentional wrongdoing." *Bryan v. Paramount Packaging Corp.*, 677 S.W.2d 453, 454 (Tenn.1984).

There is little evidence concerning this issue. The plaintiff does not remember anything concerning the automobile trip or the accident. The only witness of the accident to testify had difficulty remembering details of the evening, including where he had been and where he was going. The trial court noted, "The evidence on this issue leaves much to be desired." The court concluded that North Brothers had not carried the burden of proof on its statutory defense.

North Brothers rests its argument on two points. First, Loy had admittedly driven on this road before and was familiar with the curves. Second, even though he was familiar with the dangers of the road, he drove his car in excess of the speed limit. Thus, it is argued that Loy deliberately broke the law and that this intentional wrongdoing caused the accident.

In *Town of Shelbyville v. Hamilton,* 170 Tenn. 297, 95 S.W.2d 43 (1936), the Court held that the employee was not guilty of willful misconduct even though he was speeding. Since there are no factual details given in *Hamilton,* the case is not very useful in determining what constitutes willful misconduct. The holding itself, however, shows that driving in excess of the speed limit is not willful misconduct per se. The Court in *Southern Motor Car*

*Co. v. Patterson,* 168 Tenn. 252, 255, 77 S.W.2d 446, 447 (1935) held that the employee was "not conscious of [the] danger in the speed he was maintaining." The facts of *Patterson* are similar to this case. After traveling on the road for many miles, the accident occurred while the employee was speeding.

> Patterson was approaching a curve when he struck this loose gravel, and an eyewitness, a civil engineer of the State highway department, testified that the left front wheel of the car hung in the loose gravel and slid, causing the rear end of the car to rise in the air, turning the car over on its top.

*Id.* at 254, 77 S.W.2d at 446. The Court held, "There is no evidence that he had encountered any holes filled with gravel, until he reached the point where he was killed, and the accident seems to have resulted from a combination of the recently filled holes and the curve." *Id.* at 254, 77 S.W.2d at 446–447. Similarly, although Loy was familiar with the curves in the road, there is no evidence that he was familiar with the bump or the "little raised part in the road where it looked like it had been fixed or something." As a result, the trial court held that it was not proven that Loy was deliberate in his actions of speeding and driving over the bump in the road. The evidence does not preponderate against the trial court's finding.

The judgment of the trial court is affirmed. The costs of this appeal are taxed to North Brothers, the appellant.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.