SPRADLING *v.* BITUMINOUS CASUALTY CORPORATION *et al.*

(Two Cases Consolidated)

(*Knoxville,* September Term, 1944.)

Opinion filed May 5, 1945.

S. H. DUNN and OLIVER & MEARES, all of Maryville, for Spradling, complainant.

CRAWFORD & CRAWFORD, of Maryville, for estates of Farr and Brown, defendants (here petitioners for *certiorari*).

HODGES & DOUGHTY, of Knoxville, for Bituminous Casualty Corp., defendant (here petitioner for *certiorari*).

GODDARD & GAMBLE, of Maryville, and R. R. KRAMER, of Knoxville, for Tennessee Automobile Ins. Co., defendant.

Mr. Justice Gailor delivered the opinion of the Court.

Willie Brown and Arthur Farr were killed while riding in the automobile of Spradling, who was their employer in a logging or lumber operation in Blount County. Spradling had automobile liability insurance and he also had workmen's compensation insurance. The former insurance was in the Tennessee Automobile Insurance Company, a Tennessee corporation, and the workmen's compensation insurance in the Bituminous Casualty Corporation, a foreign corporation. The real question presented is—which of these two companies should pay the claims against Spradling for the deaths of these two employees, and it is answered by determining whether the deaths of the two employees arose out of and in the course of their employment, or whether at the time, they were guests of Spradling and riding as such in his automobile.

The appeal derives from bills filed by Spradling in the Chancery Court of Blount County against the two insurance companies and the representatives of the deceased employees. By these bills Spradling sought: (1) to set aside former decree of the Chancery Court as having been obtained by fraud; (2) a declaration that his joining in the proceeding in which the decrees were obtained was not a violation of covenants in his automobile liability insurance policy; (3) and finally a declaration of liability as between the automobile insurance carrier and the carrier of workmen's compensation insurance.

After an agreed consolidation of the two causes, the chancellor held that the former decrees were fraudulent in law and therefore void, and further held that the deceased Brown and Farr met their deaths, not in the

course of their employment, but while they were riding for mutual convenience "in the car of Spradling as his ·guests," and that, therefore, liability for the claims of their representatives was under the automobile insurance policy and not under that for workmen's compensation.

The facts present a very close question of whether or not these two employees were or were not riding in Spradling's car as his guests. There is some evidence that these two employees had threatened to quit work because of the distance they had to travel to their work. That in order to induce them to continue, Spradling then offered to take them to and return them from their job in his automobile. On the other hand, Spradling testified. that he only agreed to carry them in his automobile when he was going and coming from the work himself, or when one of his trucks was; that is to say, that he did not agree to make the trip regularly for the benefit of ·the employees, but would only take them as passengers in his car when he had other business that required his presence on the job. The chancellor, as stated, found that the injuries did not arise out of or in the course of employment and that, therefore, the death claims were not compensable under the Workmen's Compensation Act. The Court of Appeals concurred with the chancellor's holding that the former decrees of May 11, 1941, were obtained by fraud, but reversed the decree in part and held that Spradling's agreement to carry the employees to and from their work was an incident of their employment and that, therefore, their deaths were caused by injuries arising out of and in the course of employment and were compensable, and that the carrier of the workmen's compensation insurance was liable. However, the Court of Appeals further held that since it had no jurisdiction of

cases under the Workmen's Compensation Act, that it would not fix the amount of the recovery against the workmen's compensation insurance carrier and remanded the case to the Chancellor for that purpose.

The Bituminous Casualty Corporation, as carrier of the workmen's compensation insurance, against whom the judgment of the Court of Appeals was rendered, has filed petition for *certiorari,* seeking review of the record and reversal of the judgment of the Court of Appeals so far as it holds the claim compensable under the Workmen's Compensation Act. The widows and minor children of the deceased employees have also filed petition for *certiorari,* in which they seek to have this Court reverse that part of the judgment of the Court of Appeals whereby that Court refused to fix the amount they should be awarded as compensation. We granted both petitions, have heard argument and the cases are before us for disposition.

Since there is no former decision of this Court identical on the facts, and since those facts are determinative and present a very close question, we have carefully weighed the evidence to reach a conclusion. The two employees being dead, and being as well contractees under an oral contract, Spradling himself is the only witness who can accurately testify under what agreement and circumstances the employees were being carried as passengers in his automobile. His evidence is not entirely satisfactory.

On December 7, 1940, the day of the accident, Spradling made two statements, one to the representative of the Tennessee Automobile Insurance Company in which he says, "I told them when we went out there they were going to contract this cutting and they didn't have a partner and Brown said he didn't believe they could

448

cut it, said they didn't have any way to get back and forth. I said it looks to me like you could cut it. I said as long as I am going it won't cost you a penny to go with me. Then after they didn't want to do that I said, let's go to work by the day. Q. It was part of their employment agreement you were to furnish their transportation. A. That's right, that was what they said about contracting, they didn't have any way to go back and forth."

On the same day he signed a statement in narrative form for the representatives of the Bituminous Casualty Corporation in which he said, "I did not have as a part of their contract of employment any agreement to furnish these men, or any one of them with transportation, either to or from their work. However, some ten days ago I did talk with Mr. Willie Brown and Mr. Art Farr concerning the proposition of their getting to and from their employment, and at that time I agreed that if it so happened that either I or one of my trucks was going toward either of their homes or toward their place of employment at the time they were that they would be permitted to ride either with me or on the truck. This agreement, of course, was one of convenience to both the men and me, and at no time did I agree to furnish them with transportation except as stated above." Obviously this last statement is in the language of the adjuster, not of Spradling, whose vocabulary is preserved in unrefined form in his deposition, *supra.*

His testimony on the stand was substantially in accord with this last statement. However, it appears from his testimony that after the conversation with the two men about their transportation, Spradling did, as a fact, carry them to their work every day, although on two or three evenings he did not bring them back. Judging from his

grammar and vocabulary, Spradling is not an educated man and certainly not a trained lawyer. It is obvious that this second statement is made in technical language by a man who knew the effect of every word that was being used; whereas, the former statement made in answer to questions propounded, was in Spradling's own language. Clearly, Spradling did not know the full legal significance of the word "contract." In answer to a question whether the employees were cutting the timber "under contract," he said, "No, they were cutting it on wages of 30 cents an hour."

It is perfectly reasonable as a conclusion from what he said, that he considered that the contract was confined to wood cutting at 30 cents an hour. He seems to make a distinction between that and a contract to cut the whole amount of timber for a lump sum, which was the agreement which he had with another employee, Hightower, who does not testify, though he was a passenger in the automobile at the time of the wreck. It is not to be doubted that the two deceased employees were induced to work for Spradling by reason of the fact that he promised to carry them to and from their work without charge. The effect of this inducement would not be changed by reason of the fact that the transportation was or was not furnished every day. Even if it was furnished irregularly but as an essential inducement to the employment, it would so become, we think, a part of the contract of employment.

It will be noted that in the statement taken (and prepared) by the adjuster for the Tennessee Automobile Insurance Company, the phrase "mutual convenience" is used, the implication being apparently that if the transportation of his employees by Spradling was a matter of "mutual convenience," that then it would not

be in the course of the employment of Brown and Farr. We do not find any authority for this position, nor is it reasonable either that the convenience of the employer, the employee or both should be the basis of the test.

The evidence is undisputed that these employees were reluctant and unwilling to undertake to cut the timber because of the difficulty of transportation to and from their place of work. It is also clear that only when Spradling agreed either (1) as he first stated, to furnish the transportation, or (2) according to his testimony and later statement to furnish the transportation if he or his trucks were making the trip, that Brown and Farr did undertake the job. Clearly, therefore, the agreement of Spradling to furnish transportation (no matter what the exact details of that agreement were) was the determining factor which induced the men to become the employees of Spradling on the job to which they were going when the fatal accident occurred.

It follows that the fact that Brown and Farr were passengers in Spradling's car was clearly and definitely related to their employment, and that they were where they were, within the course and scope of their employment.

 We are aware that the injury to be compensable, must arise not only in the course, but also out of the employment. *Barrentine* v. *Dierks Lumber & Coal Co.*, 207 Ark. 527, 181 S. W. (2d) 485, 487(2). It cannot be doubted that Brown and Farr were in the car, going where they were going "in the course" of their employment and to us it seems equally clear that the injuries arose "out of their employment" for the same reason.

The test applied in *Barragar* v. *Industrial Commission*, 205 Wis. 550, 238 N. W. 368, 78 A. L. R. 679, was approved by this Court in *Free* v. *Indemnity Ins. Co. of*

*N. A.,* 1177 Tenn. 287, 292, 145 S. W. (2d) 1026, 1028: "If the business of the master creates the necessity for the travel, the servant is in the course of his employment. . . ."

But evidently the trip may be for the mutual convenience of both the employer and employee. The Wisconsin Court states the test as follows [205 Wis. 550, 238 N. W. 369]: "We have concluded that it is essential, by some process or other, to determine whether, at the outset, the trip in question was that of the employer, or that of the employee."

█ Here it cannot be doubted that the trip was that of Spradling, the employer, and injuries sustained thereon were compensable under the Workmen's Compensation Act.

The decisions of *Norwood* v. *Tellico River Lbr. Co.,* 146 Tenn. 682, 244 S. W. 490, 24 A. L. R. 1227, and *McClain* v. *Kingsport Imp. Corp.,* 147 Tenn., 130, 245 S. W. 837, furnish application by this Court of the test stated in *Barragar* v. *Industrial Commission, supra.* In the *Norwood Case* the employee was injured while returning on the employer's train from a visit to his father-in-law. Clearly the trip was the employee's and liability was denied. In the *McClain Case,* the employee was injured while riding to work on his employer's horse, the trip was the employer's and the injuries compensable under the act.

The Supreme Court of Arkansas, on facts very similar to those of the present case, held a claim compensable under a Workmen's Compensation Act on the statement of the employer that there was no agreement to provide transportation but "we had trucks going out there and if they (the employees) wanted to ride they could."

*Hunter* v. *Summerville,* 205 Ark. 463, 465, 169 S. W. (2d) 579, 580.

"The word 'employment,' as used in the Workmen's compensation act, does not have reference alone to actual manual or physical labor, but to the whole period of time or sphere of activities, regardless of whether the employee is actually engaged in doing the thing he was employed to do." Id., 205 Ark. 467, 169 S. W. (2d) 581, col. 1 (quoting from *Wirta* v. *North Butte Mining Co.,* 64 Mont. 279, 210 page 332, 30 A. L. R. 964).

We conclude from the foregoing that here the claims of the widows and minor children of the deceased employees are to be paid under the policy of insurance issued by the workmen's compensation carrier, the Bituminous Casualty Corporation. The judgment of the Court of Appeals is affirmed in so holding.

■ Considering finally, the petition for *certiorari* filed by the representatives of the deceased employees, since the proof of earnings is not entirely clear, we think that the cases must be remanded to the chancery court for a reference to ascertain the amount to which claimants are entitled under the Workmen's Compensation Act, and that on the coming in of such reference the Chancellor may enter the necessary decree.

The defendant, Bituminous Casualty Corporation, will pay the costs.