PATRICIA H. KNOX, as Administratrix of Estate of Joe S. Knox, Appellant,

*v*

CARL J. BATSON, dba Batson Construction Company, Appellee.

MRS. ANNIE AMMONS, Appellant,

*v*

CARL J. BATSON, dba Batson Construction Company, Appellee.

399 S.W.2d 765.

(*Nashville*, December Term, 1965.)

Opinion filed January 5, 1966.

HOOKER, KEEBLE, DODSON & HARRIS, Nashville, for appellant Patricia H. Knox, etc.

GULLETT, STEELE & SANFORD, Nashville, for appellant Mrs. Annie Ammons.

DODSON, BATSON, WILLIAM J. HARBISON, Nashville, for appellee.

MR. JUSTICE CRESON delivered the opinion of the Court.

These are actions to recover death benefits under the Tennessee Workmen's Compensation Law. The cases originated in the Circuit Court of Davidson County. Both in the Trial Court and in this Court, they have been most ably presented, briefed and argued. Handling of the case by the Trial Judge was no less than excellent.

The original petitions in these actions allege that the appellants here are the widows of deceased employees of the appellee; that recovery was sought for the benefit of such widows and minor children; that on January 8, 1964, and for some considerable time prior thereto, the

decedents had been employees of the appellee, Carl J. Batson, dba Batson Construction Company; that some time prior to January 8, 1964, the appellee ordered the decedents to report to work at or near Tullahoma, Tennessee; that the site of the work was a residential construction project at or near Tullahoma, Tennessee; that the decedents' employment was that of dry-wall finishers; that the deceased employees were directed to stay at a motel in Coffee County, Tennessee, known as The Blue Top Motel; that as a part of their compensation the appellee would pay their lodging costs.

The petitions further alleged that, acting under these instructions, the deceased employees went to the area of Tullahoma, Tennessee and there resided in lodgings provided for them by the appellee; and that, on the night of January 7, 1964, or the early morning of January 8, while the deceased employees were occupying the motel room, they were there asphyxiated by leakage of gas from a heater installation in said room. The necessary allegations as to average weekly wage and prayers for relief follow.

The petitions were met by answer on behalf of appellee, which admitted the status and the dependency of the beneficiaries of the action; admitted that at the time of their death the deceased employees were in the general employ of the defendant, and admitted that all parties were subject to the provisions of the Tennessee Workmen's Compensation Law. Defendant further admitted that for some weeks prior to January 8, 1964, the deceased employees were engaged in construction work for the defendant, near Tullahoma, Tennessee. The appellee categorically denied that deceased employes, or any other employees, were ordered or directed to stay in any

particular place, and denied that any duty or aspect of the employment required any employee to have his lodging in any particular place. Appellee admitted that he paid his employees an additional living allowance, in separate checks, while working out of town. The answer alleged that each employee was authorized to travel back and forth to his home in Nashville, Tennessee, to reside on the premises of the construction work, if he so desired, or to stay in whatever public or private accommodations were available in the area of the construction work. Appellee did inquire as to what lodging facilities might be available and furnished the information he gained to the employees of all crafts.

Upon these issues the proof was taken. The case was twice argued before the Trial Judge and he was provided able briefs. After taking the case under advisement, in order to have sufficient time to fully consider same, the Trial Judge concluded that decedent's beneficiaries were not entitled to recover compensation benefits. Motions for new trial were seasonably filed, argued, and overruled. Appeal was then perfected to this Court.

The Trial Judge prepared and filed a comprehensive finding of facts, which is as follows:

## "FINDING AS TO FACTS

It is undisputed that Ammons and Knox, for some time previous to their deaths had been employed by the Defendant, Batson, in the construction of various residential houses in the Tullahoma area, and in other locations in Middle Tennessee. Their particular employment may be described as 'dry-wall finishers' and they, along with several other workers, formed a group, which went along with the construction work of Batson

when and where it arose. Prior to their death, Ammons and Knox, along with the other members of the group or crew, were employed in the construction of houses in a development undertaken by Batson in the vicinity of Tullahoma. The group including Knox and Ammons were employed and paid on an hourly basis. Knox was a foreman over the crew and kept certain records pertaining to the other workers which will be referred to later on. He also checked other Batson jobs and was paid $50.00 extra as expense money for the use of his truck. Both Ammons and Knox had been on the Tullahoma job sometime previous to their untimely death—at least two or three months. Petitioners contend their deaths were caused by a defective gas heater in 'The Blue Top Motel' and this contention is not controverted by the proof.

The Court finds from a preponderance of all the evidence that Batson paid the dry wall finishers the same wages on an hourly basis whether the job they worked on was in Nashville where they lived or in some other location; however, when the job was out of Nashville, such as Tullahoma, he gave them an 'allowance' of $4.00 per day for expenses, and this amount was paid to all of the group regardless of whether they remained in Tullahoma or commuted back and forth to their homes in Nashville. While Petitioners earnestly contend otherwise, the Court finds that there was no limitation or restriction placed on the workers while employed in Tullahoma in respect to where they stayed, where they ate or what they did after work; the only rule laid down by Batson was that the workers would report on the job daily at 7 A.M., ready for work; some of the dry-wall finishers were permitted to lodge in the houses under construction, some lodged at different

motels in the vicinity of Tullahoma and some commuted at various times to their homes. When Batson had construction work out of town he retained general supervision, but he also had a superintendent on the job. They both knew and understood some of the drywall finishers might prefer to remain in Tullahoma rather than commute to their homes in Nashville, a distance of 75 miles; to assist these men, it was the custom of the Batson supervising personnel to make inquiries of the facilities open to the workers for lodging and report such facilities to the workers; some of the workers stayed in one place and others in another place; some commuted to their homes in Nashville.

Knox and Ammons became dissatisfied with the particular motel where they were staying and so informed the superintendent who drove out to The Blue Top Motel and made inquiry to see if Knox and Ammons could obtain accommodations there; other Batson workers were already staying at this motel; when Knox and Ammons were informed by the superintendent that The Blue Top Motel could and would furnish lodging, they moved out to it and it was here they met their tragic deaths; the Petitioners insist that the superintendent 'arranged' for Knox and Ammons to go to The Blue Top Motel and by so doing it was tantamount to a direction or inducement by their employer, Batson, to have them stay at a particular lodging place selected by Batson; this insistence is denied by the Defendant, and after weighing all of the evidence the Court is of the opinion and so finds that, the actions of the superintendent were not undertaken for the purpose or with the intention to restrict or limit Knox or Ammons in the free selection of a place to lodge, but the action he took was at the request of Knox and

Ammons and made with the intention of facilitating better living conditions and as an accommodation to them. The Court further finds that Knox as a foreman for Batson and as part of his duties kept certain records, heretofore referred to, which among other things included the number of days spent out of town by each member of the group during any week and the place where they stayed; these records were delivered by Knox to his superior who in turn would deliver them to the bookkeeper in Nashville; she would then determine the amount due each motel for each worker's lodging and out of the $4.00 daily 'allowance' issue a company check to the respective motel and then issue another company check for any balance of the $4.00 'allowance' due the individual worker; this system had prevailed while the construction work at Tullahoma had been under way; the checks so issued were delivered to the foreman or superintendent and then delivered by them to the motels and the workers and by this method all concerned were advised of what was taking place in respect to the allowance. The proof further indicates the defendant adopted this system for income tax purposes.

It is insisted that Mr. Knox at times kept the records here referred to after working hours at night and that the dry-wall finishers were also required at certain times after working hours to see that the houses under construction were heated in order to avoid damage. These contentions are not in the opinion of the Court sustained by the weight of the evidence.

The Court further finds that Knox and Ammons at the time of their deaths were in their rooms at The Blue Top Motel and were apparently overcome by a

lethal gas while in their sleep; prior to going to bed they had been playing cards for some hours with other Batson workers; there is no evidence they were engaged in any type of work connected with their employment by Batson after they had left their customary jobs with the other workers on the afternoon before they met their death."

■ Though no question is raised in the briefs in this Court on the point, it is pertinent at the threshold to note the statement of principle by this Court in *Ward v. North American Rayon Corp.* (1963), 211 Tenn. 535, 366 S.W.2d 134:

"This being a workmen's compensation case, the Chancellor's findings of fact, if supported by any substantial evidence, are conclusive upon us—conclusive not only as to the credibility of the witnesses and the basic evidentiary facts, but also as to the inferences reasonably drawn from such facts. *Atlas Powder Co. v. Leister,* 197 Tenn. 491, 274 S.W.2d 364; *Gen. Shale Products Corp. v. Casey,* 202 Tenn. 219, 303 S.W.2d 736; *J. E. Greene Co. v. Bennett,* 207 Tenn. 635, 640-641, 341 S.W.2d 751."

See also, *White v. Whiteway Pharmacy, Inc.* (1962), 210 Tenn. 449, 360 S.W.2d 12.

Upon the facts as found by him, the learned Trial Judge rendered a full Memorandum Opinion, including the review of pertinent case and text authority. As stated, he concluded that the petitioners below were not entitled to Workmen's Compensation benefits. Final judgment was entered on April 29, 1965, dismissing the petitions.

■ This Court is presented with a single question.

That question is whether or not the deaths of Joe S. Knox and Robert Norman Ammons arose out of and in the course of their employment. For the appellants to prevail, both of these conditions must be present. The phrases "arising out of" and "in the course of" are not synonymous; but, rather, embody distinct concepts which are primarily basic to liability under the Workmen's Compensation Law. This has been repeatedly stated by this Court. It is only necessary to point out from *McAdams v. Canale* (1956), 200 Tenn. 655, 294 S.W.2d 696, the following:

" 'Rising out of employment' refers to the origin of the injury, while 'in the course of employment' refers to the time, place and circumstances. *Hendrix v. Franklin State Bank,* 154 Tenn. 287, 290 S.W. 30, and others. The injury received must arise 'out of' the employment as well as 'in the course of' employment. *Thornton v. RCA Service Co., Inc.,* 188 Tenn. 644, 221 S.W.2d 954.''

Further, the Tennessee law is clear that if an employee suffers an accident in the course of employment, it does not necessarily follow that the injury arose out of his employment. See *Sandlin v. Gentry* (1957), 201 Tenn. 509, 300 S.W.2d 897.

Before testing the facts of the instant case against the background of precedent, it is helpful to eliminate certain arguments which may be said to have at least a superficial application to the solution of the case at bar. For example, it is of no avail to the appellants here to say the accident would not have happened if the servant had not been engaged in the work at the time or had not been in that place. It must appear that death has occurred from something he was doing in the course of his work or from some peculiar danger to which the

work exposed him. Further, the mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of the employment. Injury or death of an employee, to be compensable, must arise out of a risk peculiar to the employment. Injury or death of an employee from an exposure which is no more or different than that of any other member of the public similarly situated in place and time is not compensable. These views have been heretofore sustained by this Court in *Scott v. Shinn* (1937), 171 Tenn. 478, 105 S.W.2d 103; *Thornton v. RCA Service Co.* (1949), 188 Tenn. 644, 221 S.W.2d 954; *Jackson v. Clark & Fay, Inc.* (1954), 197 Tenn. 135, 270 S.W.2d 389.

Appellants here rely heavily upon two prior decisions of this Court as determinatively supporting their contention that the deaths of these two employees are compensable. In *Employers' Liability Assurance Corp. v. Warren* (1938), 172 Tenn. 403, 112 S.W.2d 837, the insurance company had appealed from an award of compensation to the wife of a deceased employee. The employee was killed in an accident which occurred in Lafayette, Tennessee. At the time of the accident, the deceased was employed by Snyder Brothers as a special agent and adjuster in the fire insurance business. The decedent's territory was the State of Tennessee. His duties required him to appoint agents, adjust accounts, make collections, inspect buildings, and adjust losses. His headquarters were in Nashville, Tennessee, but he traveled continuously from place to place, over the State, following a pre-arranged itinerary and reporting to his employer, daily. The deceased employee had gone to his hotel room in Lafayette, Tennessee, and was awaiting the arrival of a Mr. Johnson, who was to assist him in his work. He

had gone out onto a porch on which his room opened and had been reading a magazine. Upon arising to re-enter his room to pursue his work, he stumbled and fell over the porch bannister, receiving injuries from which he eventually died. It was the insistence, on appeal, of the employer, that there was no evidence to support the Trial Court's finding that the deceased's accident arose out of and in the course of his employment. The primary issue was whether the accident arose out of the deceased's employment. The crux of the decision appears in two expressions of this Court. The first is a quote from *Patten Hotel Co. v. Milner,* 145 Tenn. 632, 238 S.W. 75, 76, as follows:

"An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all of the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

In applying the test quoted from that case, this Court then reasons as follows:

"This is not a case of an employee whose duties are in a factory or store, or other place apart from his home, and who, after his day's work is ended and after his return to his home, while occupied with his home duties or pleasures, suffers an accident. Warren was away from his home on a mission wholly in behalf of and under the direction of his employer, and the risks incident to his journey, including natural and usual suspension of actual work, were within the protection of the Compensation Act."

In the case of *Carter v. Hodges* (1939), 175 Tenn. 96, 132 S.W.2d 211, the widow of a deceased employee

brought suit against the decedent's employer to recover Workmen's Compensation for the accidental death of her husband. The husband had met his death in a hotel fire in Atlanta, Georgia. The deceased employee had been engaged as a traveling salesman for the employer for about three years. It appears that at the time of his death the deceased employee had completed his sales route for the current period and was in the process of returning to his home, by direct route, when he paused to spend the night in the Atlanta hotel. Atlanta was on his direct route and a regular stopping point in covering his territory. The Trial Court awarded compensation in this case. Employer's appeal was based upon the theory that (1) the deceased was an independent contractor, and (2) the injury did not occur as a result of accident arising out of and in the course of the deceased's employment. The rationale of this decision appears from the following:

"(5) The second question presented is whether deceased met his death by an accident arising out of and in the course of his employment. Certainly, we think, he met his death in the course of his employment because his employment necessitated his going from Athens, Georgia, to Newnan, LeGrange and Carrelton, Georgia. His route lay through Atlanta. This was his regular route. Carter says, 'He would always spend the night in Atlanta on that route.' There was no deviation in his itinerary. It appears that he sold candy for the Schlesinger Candy Company, located in Atlanta, in the states of Kentucky and Tennessee; not in Georgia. The proof is that he did not contact the Schlesinger Candy Company on this trip. In going from Athens to Newnan and these other towns, via Atlanta, he was on his master's business.

We think deceased met his death in an accident growing out of his employment. Deceased was acting in course of the employment. The performance of duty made it necessary to him to travel, and, while going about the employer's business, injury resulted. *Employers' Liability Assurance Corp. v. Warren,* supra, and the authorities cited therein. Deceased had to eat and sleep. He was away from home and, so, was under the necessity of putting up at a hotel or boarding house. In *Tennessee Chem. Co. v. Smith,* 145 Tenn. 532, 539, 238 S.W. 97, 99, the court quoted with approval the following from *Whiting-Meade Commercial Co. v. Industrial Accident Commission of California,* 178 Cal. 505, 173 P. 1105, 5 A.L.R. 1518:

'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.' "

The last mentioned authorities represent the "traveling men" cases in Tennessee. The same is true of *Martin v. Free Service Tire Co.* (1949), 189 Tenn. 327, 225 S.W. 2d 249. On critical examination of these cases, several

basic reasons for the conclusions there reached become apparent. In the first place, the employees travel and incidental lodgings in the course of travel are prime incidents of the consensual agreements of employment. The taking of lodging in hotels, in both cases, was clearly contemplated as an essential ingredient of the performance of the employment by the employee. Such was in no sense merely coincidental, in relation to the employment. Much case and text authority supports the conclusion that such cases are compensable upon the very considerations we have just alluded to.

■ We are well aware of the rule that Courts will liberally construe applicable provisions of Workmen's Compensation Acts to the end that doubt as to whether the injuries arose out of or in the course of employment be resolved in favor of the employee. See *Tapp v. Tapp* (1951), 192 Tenn. 1, 236 S.W.2d 977. However, it was not even necessary to rely on this rule of construction to reach the result obtained in *Employers' Liability Assurance Corp. v. Warren* and *Carter v. Hodges,* supra. As before stated, travel and lodging in the course of travel were essential incidents of the employment under test in those cases.

■ In determining whether the case at bar falls within the ambit of compensability under the Tennessee Workmen's Compensation Law we must take note of certain pertinent concepts which have been heretofore enunciated by this Court. This determination logically begins with consideration of such pronouncements as that from *Sandlin v. Gentry* (1957), 201 Tenn. 509, 300 S.W.2d 897, as follows:

"An employee may suffer an injury during the course of his employment but at the same time it does

not necessarily follow that the injury arose out of and in the course of his employment. An accident arises 'out of employment' where there is apparent to the rational mind upon consideration of all the circumstances a [*causal*] casual connection between the condition under which the work is required to be done and the resultant injury."

In *Thornton v. RCA Service Co.* (1949), 188 Tenn. 644, 221 S.W.2d 954, the facts involved an assault upon the employee by a stranger, who was said to be either insane, drunk, or otherwise irresponsible. This occurred while the employee was eating lunch in a restaurant, in the course of a trip from Norris to Knoxville, Tennessee, where he was to do certain work. In the course of its opinion, this Court noted that "[t]he mere presence at the place of injury because of employment will not result in the injury being considered as arising out of the employment." Further, after reviewing many Tennessee cases, this Court concluded as follows:

"These cases seem to be conclusive against the contention of Mr. Thornton. In each of them compensation was refused because the assault did not arise out of any risk peculiar to the employment of the party assaulted, and was not made because of the employment, or identity of his employer. Thornton's situation was the same. He was not subjected to any more or different risk from that of any other member of the public who happened to be in this restaurant at that time. The fact is that a man who was either crazy, or drunk or otherwise irresponsible, happened to select Thornton from those present as the person upon whom he would make the assault. He did not know Thornton, was not aware that Thornton worked for RCA or what

the nature of his business was, and did not care. There was no causal connection between the nature of Thornton's employment and this assault."

The opinion concluded with this statement:

"It is true that this Court is properly committed to a liberal construction of the Workmen's Compensation. Act in favor of the employee. However, to hold that this assault upon Thornton is compensable would seem to amount to a subjection of the employer to unrestricted hazard,—a risk not intended by the Workmen's Compensation Act."

As stated, while there is no similarity in fact between this case and the instant one, the basic principles enunciated above are apposite.

After examining many authorities, we are impressed most by the reasoning of the United States Circuit Court of Appeals (5th Circuit), in *Rodriguez v. Great American Indemnity Co.* (1957), 244 F.2d 484. The facts in this case are quite similar to those in the case at bar. Rodriguez was a carpenter who was paid by the hour for his work. Although he lived in San Antonio, Texas, he was lodging at a hotel in Del Rio, Texas, some 160 miles away. He stayed at Del Rio about four and one-half days each week and was allowed $5.00 per day for expenses while away from his home. He had stayed at various hotels in Del Rio. It was shown that it was impractical for him to commute because of the distance involved. A fire destroyed the hotel where Rodriguez stayed and he was fatally injured. The facts were that when his work day was over, Rodriguez could go anywhere he wanted to go and do anything he wanted to do until sixteen hours later, when he was supposed to report back for work on

the job. His duties, for his employer, were related to a fixed construction job site. The reasoning in this case seems highly pertinent to the situation we now have. It is, in part, as follows:

"The same careful study of compensation cases in general will show that in case after case the courts have made it clear that the intention to maintain a constant pattern has never changed or wavered. This pattern is that a workman employed at regular hours and places, when going to and from his work or when asleep or otherwise off duty, is not engaged in the course of his employment and that if injured at other times and places than in his working hours and at his work, the injury does not originate in the employment."

It is further said:

"The Texas courts in construing this statute, following the rule announced by the Supreme Court of Massachusetts in the case of *In re McNicol*, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306, have consistently held that 'In order that an employee may recover under the provisions of this law, proof that his injury occurred, while he was engaged in or about the furtherance of the employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business or profession.' "

We find ourselves, in the case at bar, in the same situation as indicated by the Federal Court, as follows:

"No case, holding, as here contended for, *that merely because a workman has taken a job away from his*

*home, though it is a job with regular hours at a regular rate of pay per hour and at a regular place of work, the principles governing the kind of job he holds do not apply, and if injured away from his place of work off duty and out of hours, he is entitled to compensation, has been cited to us, nor have we found any.* To so hold in this case, in the face of these settled principles, would be, we think, to seriously and unwarrantedly breach the settled pattern of the law."

It is true that the last mentioned authority involves the compensation law of Texas and is a Federal Court decision. It cannot be "controlling", as counsel have insisted; but the Court's reasoning seems to us to be logical and sound. In the instant case, and in that case, we find a fixed site construction job as the area of work, an hourly employee free of all duty at the close of the allotted period of work, and an employee who finds lodging in the area of the job site of his own choosing and volition.

In conclusion, we note the opinion of Chief Justice Burnett in the case of *Armstrong v. Liles Construction Co., Inc.* (1965), 215 Tenn. 678, 389 S.W.2d 261. The deceased was killed in an automobile accident while on his way to work. He was employed as an assistant supervisor and, in this capacity, was required to move about the job area. In doing this, he often used his own car and was given a gas allowance for so doing. It was his custom to pick up various pieces of small equipment needed on the job on his way home from the job site. On the day of his death, he had several small items in his car which he had purcased the night before and was taking to work with him. The surviving wife contended that on the strength of these facts, the trip to the job on the morning in question

was within the course of and arose out of the deceased's employment. The Trial Court rejected this contention. This was the basis of the sole question on appeal.

This Court affirmed the decision of the Trial Court, relying much upon the New York case of *Marks' Dependents v. Gray* (1929), 251 N.Y. 90, 167 N.E. 181. The essence of the holding of that case seems to be that the employee is not covered by Workmen's Compensation when the accident occurs "while the employee is on business which is primarily his own, that is, a trip that he, personally, would make independent of the need for assistance to his employer."

Notably, it is said:

"One of the primary errors in the application of the Workmen's Compensation Laws in the United States is confusing them with a form of social insurance as found in Great Britain. The Tennessee Compensation Laws were intended solely to compensate a worker for injuries arising out of employment and in the course of the employment. It would be broadening the laws too much to allow a worker to gain compensation simply because on his way home he picks up some small article for his employer's use."

Thus it is that we cannot accept the argument that the unfortunate deaths of Knox and Ammons, in the instant cases, arose out of their employment by Batson Construction Company merely by reason of the fact that they elected, on their own volition, to engage lodging nearer the fixed construction job site than their homes. Unlike the "traveling men" cases, the lodging here was not a direct incident to the employment. It was, at most, only coincidental; relating exclusively to the comfort and

convenience of these employees, it being not so far removed from the fixed site of their daily work.

In light of the foregoing, we are constrained to, and do, affirm the judgment of the Trial Court; with costs assessed against the appellants, in equal parts.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CHATTIN, JUSTICES, concur.

## Opinion on Petition to Rehear

 Since the filing of our original opinion in these companion cases, the appellants have filed a Petition to Rehear, Brief in support thereof, and Supplemental Brief and Argument. Almost in their entirety, these documents do not meet the requirements of the rules of this Court. We are constrained to state, again, as has been said many times in variant language, that the office of a petition to rehear is to call the attention of the Court to matters overlooked, not those things which counsel supposes were improperly decided, after full consideration. Further, this Court has said, and says again, that a petition for rehearing should never be used for the purpose of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered which was overlooked by this Court. Rule 32 of this Court governs the subject of rehearing and says, "A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked."

As stated, with one exception, the petition to rehear and briefs are squarely afoul of this interdiction. One additional authority, *Taylor v. Meeks* (1951), 191 Tenn. 695, 236 S.W.2d 969, is now adduced; and heavy reliance placed thereon by appellants. It is said in the briefs, with

much emphasis, that our original opinion in the case at bar departs from the law as enunciated in *Taylor v. Meeks,* supra. With this statement, we are not in agreement. While *Taylor v. Meeks* is another of the transportation cases, we believe that, in truth, the opinion in that case is in conformity with our original opinion in this case. In that case, the defendant Meeks operated a sawmill about ten miles from his home and regularly carried his employees back and forth in his truck. On the day of Taylor's injury, the employees were riding home from the mill. The defendant was driving the truck. As they proceeded along the highway, the plaintiff was struck in the eye by an overhanging limb. The principal issue made in the case was that the accident did not arise out of and in the scope of the plaintiff's employment.

The following from *Taylor v. Meeks,* supra, seems to make it abundantly clear that there is no conflict of principle between that case and the case at bar:

"(3) We do not consider it important to a determination of the issue that the defendant's employees, and especially Taylor, were not being paid any wages for the time consumed while being transported to and from work. The employer furnished the transportation, and it was beneficial to him in securing their services. In determining liability in cases of this kind the courts consider whether or not there is any causal connection between the nature of the employment and the injury. *Thornton v. RCA Service Co.,* 188 Tenn. 644, 221 S.W. 2d 954, and cases cited. In *Spradling v. Bituminous Cas. Corp.,* 182 Tenn. 443, 187 S.W.2d 626, 629, Mr. Justice Gailor speaking for the Court said: 'The test applied in *Barragar v. Industrial Commission,* 205 Wis. 550, 238, N.W. 368, 78 A.L.R. 679, was approved by this Court in

*Free v. Indemnity Ins. Co. of N. A,* 177 Tenn. 287, 292, 145 S.W.2d 1026, 1028: "If the business of the master creates the necessity for the travel, the servant is in the course of his employment. \* \* \*" ' Other cases cited in the foregoing opinion are applicable to the case at bar.

(4-6) We pretermit any consideration of the transportation being for the 'convenience' of one or the other of the parties. That is not the test. Adverting to the general principle of causal connection between the nature of the employment and the injury we think there is such a connection. It cannot be doubted that Taylor was on the truck by reason of and 'in the course' of his employment, and the accident arose 'out of his employment.' These employees were being regularly carried by the employer. Had he not furnished the transportation the saw mill could not have been operated. *We can reach no other conclusion than that the transportation was a part of the business. Moreover we think from the evidence before us there was an implied contract that these employees would be carried to and from their work* but their wages would start upon arrival at the mill and stop upon departure. The case of *Free v. Indemnity Ins. Co. of N. A.,* 177 Tenn. 287, 145 S.W.2d 1026, relied on by appellant has no application to the instant case." (Emphasis supplied).

Thus it is that the very fact was present in that case, the lack of which in the instant case, cause it to fail of compensability. With this additional comment, we are content to fully adhere to our original Opinion; the Petition to Rehear is denied.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CHATTIN, JUSTICES, concur.