O. L. WALKER

*v.*

DECORA, INC., et al.

471 S.W.2d 778

(*Jackson*, April Term, 1971.)

Opinion filed August 16, 1971.

Petition for Rehearing Denied October 11, 1971.

506

W. W. Lackey, Savannah, Glenn H. Whitlow, Selmer, for plaintiff.

W. J. Reynolds, Selmer, Pierce Winningham, Jr., Jackson, Ashley, Malone, Ashley & Lawson, Dyersburg, Ross, Ross & Hopper, Savannah, for defendants.

Mr. Justice McCanless delivered the opinion of the Court.

O. L. Walker, a merchant in Adamsville, brought suit for damage to his property and business resulting from the installation of a floor in his grocery store. He sued (1) Decora, Inc., of Cincinnati, Ohio, as the originator,

supplier and developer of the material employed in the laying of the floor; (2) Premium Finishes, Inc., also of Cincinnati, Ohio, the manufacturer of the material; (3) Pioneer Materials, Inc., of Dyer County, the distributor of the material; and (4) Hobart Landreth of McNairy County, the installer of the floor.

The defendants, other than Premium Finishes, filed pleas and defended the suit. Premium Finishes, which was served with process in accordance with the procedure prescribed by Chapter 67 of the Public Acts of 1965, now carried in Tennessee Code Annotated as Sections 20-235 to 20-240, inclusive, did not defend the suit, and the court entered judgment by default against it.

The plaintiff sued each of the four defendants on the theories of (1) tortious misrepresentation, (2) strict liability in tort, (3) negligence, and (4) breach of warranty. At the conclusion of all the proof the Circuit Judge directed verdicts in favor of the defendants, Pioneer and Landreth, on all four counts of the declaration; in favor of Decora on the breach of warranty count; and in favor of the plaintiff and against Decora on the tortious misrepresentation, strict liability, and negligence counts. Under a writ of inquiry the jury ascertained the amount of damages against Premium Finishes, against whom the default judgment had been pronounced and against Decora on the three counts, tortious misrepresentation, strict liability in tort, and negligence, on which he had directed a verdict in favor of the plaintiff and against Decora. The jury returned its verdict against the defendants, Premium Finishes and Decora in the amount of $11,500.00.

The motion of Decora for a new trial was overruled and it perfected its appeal in the nature of a writ of error to the Court of Appeals. The plaintiff moved for a new trial, and assigns as error, if any assignment of error of Decora be sustained, the action of the trial court (1) in directing a verdict in favor of Pioneer and Landreth, (2) in directing a verdict in favor of Decora as to the breach of warranty count, (3) in refusing to permit plaintiff to read in evidence a pre-trial discovery deposition of the president of Premium Finishes, and (4) in refusing to grant an additur in view of what he contends to be an inadequacy of the judgment and verdict. He perfected his appeal in the nature of a writ of error.

The Court of Appeals affirmed the judgment of the trial court in directing a verdict in favor of Decora and Pioneer Materials on the breach of warranty count of the declaration, but as to the other counts reversed and remanded the case for a new trial. As to Landreth the Court of Appeals reversed the judgment of the trial court and remanded the case for a new trial on all four counts. We granted certiorari.

During the presentation of his evidence the plaintiff read the discovery deposition of Glen Hall to which was exhibited a statement signed by him and by Harold Kail, Jimmy M. Evans, and Ray Heylmun, that part of the statement which recited the existence of liability insurance having been read to the jury over the objection of Decora.

The plaintiff sought to read the deposition of Ronald R. Savin, President of Premium Finishes, which he had taken under the discovery deposition statute, but upon objection the court excluded it for the reason that

Premium Finishes having suffered a default judgment to be entered against it, was no longer a party to the suit within the meaning of Section 24-1208, T.C.A. In making such ruling the trial judge was in error. The fact that Premium Finishes had made no defense and was not an active participant in the litigation made it no less a party and amenable to the processes and judgments of the court.

Decora filed thirteen assignments of error in the Court of Appeals, which we will consider under three headings: that the court erred (1) in admitting in evidence the signed statement of the officers and employees of Decora and Pioneer Materials; (2) in refusing to direct a verdict in favor of Decora and in directing a verdict against it; and (3) in failing to instruct the jury as to the proper measure of damages and as to the law applicable to the assessment of damages.

There is no dispute about these facts: early in 1967 Decora arranged with Pioneer Materials, which for this purpose adopted the trade name, Decora of the South, to distribute its seamless floor material known as Decor-Rock in a number of states including Tennessee. Decora was not the manufacturer but bought its materials from Premium Finishes which applied Decora labels and delivered the materials according to Decora's instructions. The advertising matter referred to Decora as the "originator, supplier, and developer" of the material, which consisted of rock aggregate of various colors with which two fluid components were mixed in equal parts; the resulting mixture, known as the base coat, was applied to the floor with a trowel, and after that coat had set a second application of the liquids, referred to in the record as a flow coat, was applied.

In the dealings between Decora and Pioneer Materials so far as they concern the issues in this case Ray Heylmun, president of Decora, represented his company, and Glen W. Hall, vice-president of Pioneer Materials, represented his company.

Early in 1967 employees of Pioneer Materials laid a floor of Decor-Rock in the cafeteria of an industrial plant at Adamsville in which Hobart Landreth was employed as a maintenance man. Landreth became interested in the process and went to Dyersburg on more than one occasion to witness and to take part in the laying of floors. He bought from Pioneer Materials a sales kit which contained samples of the floors and brochures which advertised them. The floor of the grocery store in Adamsville that was owned and operated by O. L. Walker was worn and Walker agreed for Landreth to install a new floor of Decor-Rock, relying on Decora's literature and on Landreth's representations. Landreth engaged the services of Harold Kail, an employee of Pioneer Materials, but who on this occasion was employed by and paid by Landreth and who was a person who had had experience in installing the floors. After the store had been closed on the evening of Saturday, May 27, 1967, they with two helpers mixed the materials and laid the base coat, finishing the work after one o'clock on Sunday morning. On the following morning, after Kail had returned to Dyersburg, Landreth and a helper applied the flow coat. There seems to be no question but that both the base and flow coats were properly installed.

After Walker returned home from his church service on Sunday morning he visited the store and found that the material that had been laid on his floor was giving off an offensive odor. The doors and windows of the

store had been left closed and no ventilation had been provided. Walker opened the doors but the odor continued, and on Monday it was still strong. He communicated with Landreth who telephoned Pioneer Materials. Someone at Pioneer Materials in turn called Heylmun, the president of Decora in Cincinnati, who telephoned Landreth and told him not to worry that everything would be taken care of. A truck from Memphis was sent to the scene and an effort was made to deodorize the store but without success.

The odor was so strong that it penetrated a brick wall which divided the store from the place of business next door, and when it appeared to Walker within the next few days that the stench had contaminated almost all his merchandise he moved the merchandise out of the store, most of it being taken to the junk heap. He then had the floor torn out down to the joists and replaced by a new wood floor on which he installed asphalt tile. He repainted the interior. The store was closed for about thirty days for these repairs.

It appears from the testimony of the president of Premium Finishes that before the floor was laid in Walker's store Decora had had the formulas of the flow coat liquids changed. Previously the same liquids which had been used as a binder for the rock aggregate had also been used as the flow coat, but the new material contained a thinner and thus flowed on more easily. Decora had recommended the new material to Pioneer Materials but had given no warning that an objectionable odor would result from its use. The liquids were packed and distributed in sealed cans.

Since the plaintiff sued each of the four defendants under four separate theories of liability incorporated in

the four counts of his declaration, we will consider each theory separately as it applies to the several defendants. As we have said, the defendant, Premium Finishes, made no defense and judgment by default was entered against it.

(1) We first consider the theory of tortious misrepresentation. The Circuit Judge on this count of the declaration directed a verdict in favor of Pioneer Materials and Landreth and against Decora. The Court of Appeals was of opinion that the issue of the liability of Landreth, Pioneer Materials, and Decora, under this theory, should have been submitted to the jury. We disagree. The evidence is clear and uncontradicted that Decora had prepared and circulated the brochure by which it recommended the material for use as it was used and that such use resulted in the damages complained of. We hold that the Circuit Judge properly directed a verdict on this theory in favor of the plaintiff and against Decora, and instructed the jury to determine the amount of the damages. There is no evidence from which the jury might have found that Pioneer Materials tortiously misrepresented the product to Landreth, and on this count the court properly directed a verdict in favor of the defendant. There is evidence that the defendant, Landreth, made representations to the plaintiff which would have supported a finding against him on this count. The plaintiff testified, ''I was relying on the literature and Mr. Landreth, of course.'' The rule of *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240, is applicable.

(2) The Court of Appeals reversed the action of the Circuit Court for directing a verdict against Decora and for Pioneer Materials and Landreth on the strict liability

514

count of the declaration. We agree with the Court of Appeals in affirming the directed verdict against Decora, but are of opinion that under the record the doctrine of strict liability cannot be applied to Pioneer Materials and Landreth, and that the Circuit Judge properly directed a verdict on this count for these two defendants.

■ "In a number of cases it has been held that one who labels a product with his own name or otherwise represents it to be his own is to be treated on the same basis as if he had manufactured it, and so is liable for any negligence on the part of the actual maker." Prosser, Law of Torts, 3rd Ed., Section 96. Decora, though it did not manufacture the product, labeled it with its own name and in its advertising material represented itself as being the originator and distributor.

With respect to Decora, and the manufacturer, Premium Finishes, the rule of strict liability must apply. In *Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240, the following language appears:

"There seems to be no unfairness in holding that a manufacturer who markets a product which is not only defective but unreasonably dangerous should be responsible for any physical harm which results to person or property, even though no privity of contract and no negligence can be established. It might be added that where the plaintiff can sustain the heavy burden of showing, as he must, that the product was in a dangerously defective condition at the time it left the hands of the manufacturer, it is quite likely that some negligence was involved even though this cannot be proved."

\* \* \* \* \* \*

"It seems unfair to place increasing burdens on retailers, even as to latent defects, and to exempt from responsibility the manufacturer, who normally determines what safety precautions shall be taken before the product is placed on the market, and who is the one most likely to have been careless when a particular item proves to be defective and unreasonably dangerous. It might be added that in many cases it is the manufacturer who can best pass on the costs of this increased protection to the users or consumers of his products, and to the extent that this has been done because of a more strict liability already imposed in many large states, consumers and users of products in this state already are paying for increased protection."

In neither the *Lonon* case nor in *Olney v. Beaman Bottling Co.*, 220 Tenn. 459, 418 S.W.2d 430, has the doctrine of strict liability been applied to a merchant who sells the product in a sealed container and who is afforded no reasonable opportunity to inspect. The two cases that we have cited go no further than to hold that manufacturers under appropriate circumstances are to be held liable under the rule of strict liability. In the absence of legislation we are unwilling to extend the doctrine to merchants under such circumstances as exist in this case.

(3) By the third count in his declaration the plaintiff seeks to hold each of the defendants liable on the theory of negligence. There is material evidence from which the jury was warranted in finding that the damage sustained by the plaintiff resulted from the negligence of Decora, but we find no evidence from which they might have concluded that the damage resulted from the negligence of Pioneer Materials. With regard to Landreth, there is evidence that he failed to read carefully the in-

structions to ventilate the room in which the material was being applied, but it does not appear that this omission contributed to the plaintiff's damages. The court committed no error in directing a verdict in his favor on this count.

■ (4) For liability to be imposed because of a breach of warranty privity must exist between the plaintiff and a defendant charged with the breach. *Olney v. Beaman Bottling Co.*, supra. The statute imposing liability for breaches of implied warranty is a part of the Uniform Commercial Code and is as follows:

"*47-2-315. Implied warranty—Fitness for particular purpose.*—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

■ The exceptions are not applicable to the facts of this case. The language is clear and for the purpose of this suit requires no construction. Landreth was the only defendant in privity with the plaintiff, and the record discloses facts sufficient to support a finding that there was an implied warranty of fitness for the purpose for which the floor was installed in the plaintiff's store. This count should have been submitted to the jury with respect to Landreth.

■ A statement dated June 27, 1967, relating to the installation of the floor in plaintiff's store was signed by Glen W. Hall, Harold Kail, and Jimmy M. Evans, all officers or employees of Pioneer Materials and by Ray

Heylmum, president of Decora. These persons were all active in the transaction out of which this suit grew, and were the only officers and employees of Pioneer Materials and Decora who had knowledge of the transaction. The statement, which had been exhibited by the witness, Hall, in his discovery deposition was properly introduced as evidence, but that part which indicated that liability as to certain defendants was protected by liability insurance was incompetent and should not have been read to the jury.

To summarize, we hold (1) that a directed verdict should have been rendered in behalf of Decora on the breach of warranty count, but that the only material evidence in the record supports the other three counts against Decora; (2) that the record contains no material evidence by which Pioneer Materials can be held liable and that this defendant was entitled to a directed verdict on all counts; (3) that Landreth was entitled to a directed verdict on the strict liability and negligence count, but that there was sufficient evidence to warrant a submission to the jury as to this defendant on the tortious misrepresentation and breach of warranty counts.

The defendant, Decora, requested the trial judge to include certain language in this charge regarding the measure of damages. The court granted the request. From the record it appears however, that he omitted all else from his charge. This was an omission which constituted reversible error. The defendant, Premium Finishes, although in default, is entitled to the benefit of a full charge as to the measure of damages. The Court of Appeals reached this conclusion with which we agree.

518

It follows that the judgment of the trial court is reversed and the case remanded to the Circuit Court for a new trial as to all defendants, except the defendant, Pioneer Materials, as to whom the case is dismissed.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.

OPINION ON PETITION TO REHEAR

We deny O. L. Walker's petition to rehear.

"We are constrained to state, again, as has been said many times in variant language, that the office of a petition to rehear is to call the attention of the Court to matters overlooked, not those things which counsel supposes were improperly decided, after full consideration. Further, this Court has said, and says again, that a petition for rehearing should never be used for the purpose of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered which was overlooked by this Court. Rule 32 of this Court governs the subject of rehearing and says, "A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked.' " *Knox v. Batson,* 217 Tenn. 620, 399 S.W.2d 765.