**FIDDLER'S INN, INC.,**
**Plaintiff-Appellant,**

v.

**ANDREWS DISTRIBUTING COMPANY, INC. and Carrier Corporation, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

July 31, 1980.

Certiorari Denied by Supreme Court Feb. 23, 1981.

Stanley Snodgrass, Snodgrass & Kresge, Nashville, for plaintiff-appellant.

O. B. Hofstetter, Jr., Hofstetter & Hofstetter, Nashville, for defendant-appellee, Andrews Distributing Co.

H. Wallace Maroney, Jr., Memphis (Fred A. Ross, Jr., Jackson, Miss., of counsel on the brief), for defendant, Carrier Corp.

## OPINION

LEWIS, Judge.

Plaintiff Fiddler's Inn, Inc. sued defendants Andrews Distributing Company, Inc., (Andrews) and Carrier Corporation (Carrier) for breach of warranty, misrepresentation, and negligence. Andrews filed a counterclaim against plaintiff for $18,187.39. At the conclusion of plaintiff's proof the Chancellor granted Carrier's motion to dismiss and, at the conclusion of all the proof, awarded judgment on Andrews' counterclaim for $18,187.39 against plaintiff and allowed plaintiff a setoff of $2900.

The pertinent facts are as follows: Plaintiff had decided to build a new motel similar to one it already owned. Plaintiff contacted Andrews, a distributor for Carrier, regarding Andrews' supplying air conditioning-heating units for the new motel. Andrews' employee, Kenneth La Roache, met with and discussed the type of units with plaintiff's vice president and contractor, John Hobbs. During the negotiations La Roache showed a Carrier brochure which the evidence showed was outdated and depicted at least one discontinued unit. The brochure did not depict the units which plaintiff ultimately received. After the discussion plaintiff entered into a contract to purchase 115 Carrier air conditioning-heating units, model number 51PC–1473, from Andrews for $36,800. Plaintiff subsequently paid $19,199.87 of the purchase price but refused to pay the balance.

The front walls of the motel were constructed by James Loos of Trans-Unit, Inc. La Roache met with Loos to discuss the sizing of the holes in the motel fronts for the units. The record shows that La Roache supplied Loos with a sleeve into which the units would fit to assist in sizing the holes. After the units were delivered, they were installed by Hobbs and his employees. La Roache was present during at least part of the installation.

Shortly after the motel opened, plaintiff began having trouble with the units. The primary difficulties were excessive noise and insufficient heat. The units were generally noisy and were particularly loud at the time the compressors came on. The units would not heat the rooms as quickly as plaintiff's method of operation, turning on the heat shortly before the room was to be occupied, required. Another difficulty with the units was the breakdown of their motors. Plaintiff hired William Miller, a licensed engineer, to assist in correcting the problems with the units. Miller found that the units had a lower heating capacity than the units in the brochure used in the negotiations and that the noise level of the units was higher than a level he considered acceptable. Andrews worked on the units and hired others to work on the units. Miller made four recommendations for correcting the problems with the units. Andrews followed those recommendations and made changes including installation of new mounts for the compressors, installation of larger heaters, and correction of noise from the exterior grilles of the units. Hobbs rejected the fourth recommendation, the installation of crankcase heaters, because of increased operating costs. Evidence is in the record that plaintiff did not properly maintain the units and allowed them to become dirty.

As heretofore stated, plaintiff sued Andrews and Carrier for breach of warranty,

express and implied, and misrepresentation and also sued Carrier for negligence. Andrews counterclaimed for $18,187.39, the unpaid balance of the purchase price of the units, plus interest. At the close of plaintiff's proof, the Chancellor granted Carrier's motion to dismiss. At the conclusion of all the proof, the Chancellor found in favor of Andrews on its counterclaim and awarded plaintiff a setoff of $2900 for engineering services. Plaintiff has appealed and presents three issues which we summarize as follows: 1) Did Andrews breach the implied warranty of merchantability created by T.C.A. § 47–2–314 and/or the implied warranty of fitness for a particular purpose created by T.C.A. § 47–2–315? 2) Was the granting of Carrier's motion to dismiss error?

Because this appeal is from a judgment of the Chancellor sitting without a jury, we hear this case de novo upon the record but with "a presumption of the correctness of the judgment . . . unless the preponderance of the evidence is otherwise." T.C.A. § 27–303; *Roberts v. Ray*, 45 Tenn.App. 280, 285, 322 S.W.2d 435, 438 (1958) (citations omitted).

This presumption of correctness is entitled to more than the usual indulgence since the case was tried upon oral testimony, thus giving the Chancellor an opportunity, which we do not have, to observe the manner and demeanor of the witnesses while testifying before him and to determine which way the evidence preponderated.

It has been held, both by the Supreme Court and this Court, that where a case is tried without intervention of a jury, upon oral testimony, the trial Judge's finding of fact dependent upon the credibility of the witnesses is entitled to great weight. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 493, 442 S.W.2d 259, 266 (1969) (citations omitted).

We will first discuss plaintiff's claims against Andrews. T.C.A. § 47–2–314 provides in pertinent part:

Implied warranty—Merchantability—Usage of trade.—(1) Unless excluded or modified (§ 47–2–416), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

.    .    .    .    .

(2) Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

. . . .

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

. . . .

(f) conform to the promises or affirmations of fact made on the container or label if any.

T.C.A. § 47–2–315 provides as follows:

Implied warranty—Fitness for particular purpose.—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

In discussing the heating problems the Chancellor found that plaintiff's Hobbs thought he was purchasing air conditioning-heating units with 4.5 kilowatt heaters as described in the brochure used in negotiations. The units delivered had only 3.4 kilowatt heaters and were not the units depicted in the brochure. Evidence is in the record that Andrews' La Roache was aware that plaintiff needed heaters of a greater capacity than 3.4 kilowatts. Plaintiff relied on the representations made by Andrews' use of the brochure listing the 4.5 kilowatt heater. Andrews, therefore, breached the warranty of fitness for a particular purpose created by T.C.A. § 47–2–315 when it delivered units with 3.4 kilowatt heaters.

■ In discussing the noise problem the Chancellor found that improper installation was the most important cause of the problem. The units should have been installed with rectangular subbases and with one-fourth-inch clearances between the units and the walls in which they were installed. Instead, only a 2 × 2 inch piece of wood was used as a subbase, and the units were fit snugly into the walls. The Chancellor found that "La Roache knew the particular purpose for which the air-conditioning-heating units were required, and Fiddler's Inn relied upon his skill and judgment when La Roache gave instructions to Trans-Unit concerning the size of the hole." The problem of improper clearance, therefore, was caused by Andrews. The Chancellor further found that "[a]lthough the evidence is inconclusive," Hobbs, plaintiff's vice president and contractor, told Trans-Unit the height from the floor to make the hole, thereby precluding use of the manufacturer-recommended subbase which was higher than the hole from the floor. Further, Hobbs chose not to purchase a subbase, and plaintiff did not construct a rectangular field-fabricated subbase. The problem of lack of a correct subbase, therefore, was caused by plaintiff. Andrews breached the § 47–2–315 warranty of fitness because it caused the clearance problem. The Chancellor correctly concluded, however, that the loss caused by improper installation must be borne equally by Andrews and plaintiff since plaintiff was responsible for lack of the correct subbase.

The Chancellor concluded that the other problems with the units, such as the breakdown of the motors, had not been shown "to have been caused by or contributed to by Andrews." The Chancellor concluded that poor maintenance by plaintiff was the most plausible of other possible causes for the other problems with the units.

■ From our review of the record we are unable to find any conclusive proof that the units were not merchantable. The heating problems were caused by having heaters that were too small for plaintiff's method of operation and not necessarily because the heaters failed to perform to their capacity. As discussed above, the Chancellor found that the problems of noise and other problems with the units were more likely caused by improper installation and improper maintenance, and we concur.

■ After concluding that Andrews was responsible for the loss caused by inadequate heating and one half the loss caused by excessive noise, the Chancellor entered an order for the parties to agree on the amount of loss. No proof was thereafter offered on the amount of loss caused by inadequate heating or excessive noise. Plaintiff contends, however, that the cost of remodeling the motel front walls to fit different air conditioning-heating units is an appropriate part of damages since plaintiff can find no other units that will fit in the holes now being used. We find, however, that since plaintiff has continued to use the units in question after substantial changes have been made in them and has shown no loss caused by the noise attributable to the improper sizing, the cost of remodeling the walls to fit other units is too remote a possible consequence of Andrews' breach of warranty to be considered as part of the damages. We agree with the Chancellor that $2900, the cost of engineering services purchased by plaintiff in its attempt to understand and to correct the problems with the units, is an appropriate part of damages caused by Andrews' breach.

We now consider whether the granting of Carrier's motion to dismiss at the close of plaintiff's proof was correct.

[I]n the non-jury case, when a motion to dismiss is made at the close of plaintiff's case under Rule 41.02(2), the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits, or, the trial judge, in his discretion, may decline to render judg-

ment until the close of all the evidence. The action should be dismissed if on the facts found and the applicable law the plaintiff has shown no right to relief. *City of Columbia v. C.F.W. Construction Co.*, 557 S.W.2d 734, 740 (Tenn.1977). From our review of this record we conclude that the Chancellor correctly found that plaintiff had shown no right to relief insofar as Carrier was concerned.

■ Plaintiff asserts that Carrier misrepresented that the units were Carrier units when, in fact, they were manufactured by someone else. Proof is in the record that the units were manufactured by Keeprite Products Limited but were sold as Carrier Units. "[O]ne who labels a product with his own name or otherwise represents it to be his own is to be treated on the same basis as if he had manufactured it ..." *Walker v. Decora, Inc.*, 225 Tenn. 504, 514, 471 S.W.2d 778, 782 (1971) (*quoting* W. Prosser, *Handbook of the Law of Torts* § 96 (3rd ed. 1964) (footnote omitted)). *See* W. Prosser, *Handbook of the Law of Torts* § 100 (4th ed. 1971). Any misrepresentation of the identity of the manufacturer, therefore, does not change Carrier's responsibility for the units as if it were the manufacturer. Further, we find no proof that plaintiff has suffered any damage because the units were not manufactured by Carrier.

■ Plaintiff also asserts that Carrier misrepresented that the units were fit and merchantable for the purposes for which they were sold. As will be more fully discussed below, Andrews, not Carrier, was aware of the particular purposes for which the units were needed and made representations about the units. Carrier simply sent the exact units which were ordered. As discussed above, we find no proof in the record that the units delivered were not merchantable. Plaintiff's assertions of misrepresentations by Carrier are without merit.

■ Finally, plaintiff asserts that Carrier, as well as Andrews, is liable for breach of warranty. In support of this assertion plaintiff relies on *Cooper Paintings & Coatings, Inc. v. SCM Corp.*, 62 Tenn.App. 13, 457 S.W.2d 864 (1970). This case does not control the issue before us. In *Cooper Paintings & Coatings* the manufacturer placed materials designed to induce sales of its products in the hands of its sales agents. In the instant case Andrews used a Carrier brochure in making its representations to plaintiff, but the brochure was outdated and depicted at least one discontinued unit. From the proof found in this record we cannot assume that Carrier made Andrews its agent for the purpose of using this outdated brochure to make representations about its products.

■ As discussed above, Andrews did breach the implied warranty of fitness for a particular purpose created by T.C.A. § 47–2–315. To create this warranty the seller must have "reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Id.* Since the proof does not establish that Andrews was acting as an agent of Carrier, Andrews' knowledge of plaintiff's situation cannot be imputed to Carrier. Plaintiff's contention that Carrier is liable for breach of warranty is rejected.

The judgment of the Chancellor is affirmed. Costs of this appeal are assessed to plaintiff. This case is remanded to the trial Court for collection of costs and the enforcement of its judgment.

SHRIVER, P. J., and DROWOTA, J., concur.